IN THE MATTER OF: T.R.P., MINOR CHILD

No. COA04-1356

(Filed 4 October 2005)

**Child Support, Custody, and Visitation— subject matter juris-
diction—failure to duly verify initial juvenile petition**

    The trial court lacked subject matter jurisdiction to enter a
child custody review order entered on 16 June 2004, and the order
is vacated and dismissed because: (1) the initial juvenile petition
was not duly verified as required by law when the petition was
notarized but the petition was neither signed nor verified by the
DSS director or an authorized representative of the director; and
(2) a defense based on lack of subject matter jurisdiction cannot
be waived and may be asserted at any time.

    Judge LEVINSON dissenting.

    Appeal by respondent-mother from an order entered 16 June 2004
by Judge Edgar B. Gregory in Wilkes County District Court. Heard in
the Court of Appeals 14 June 2005.

    *Paul W. Freeman, Jr. for petitioner-appellee Wilkes County
    Department of Social Services.*

    *Sherrie Hodges for Guardian ad Litem.*

    *Robert W. Ewing for respondent-appellant.*

HUNTER, Judge.

    Renee Browe ("respondent-mother") appeals a custody review
order ("Order") entered on 16 June 2004 as to the minor child
("TRP"). The issues before the Court are: (I) Whether the trial court
lacked jurisdiction to enter the Order, because the initial juvenile
petition was not verified as required by law, and (II) whether the
trial court erred in ordering the physical custody of the minor child to
her father, Ronnie Parks ("Parks"), when it failed to make findings

**IN RE T.R.P.**

[173 N.C. App. 541 (2005)]

that the minor child would receive proper care and supervision in a safe home.

On 21 April 2003, respondent-mother and her live-in boyfriend, Michael Russell ("Russell"), were charged with operating a methamphetamine laboratory in the bathroom of their home. Both pled guilty to several felony charges and received probationary sentences.

Respondent-mother and her three children had been living with Russell for several months prior to the discovery of the laboratory. At the time of the discovery of the laboratory by police, TRP was present in the home. The chemicals used in the methamphetamine laboratory were found to be volatile and explosive, and a danger to the three children living in the home.

On 22 August 2003, Wilkes County Department of Social Services ("DSS") filed a Juvenile Petition ("Petition") alleging that TRP, a minor child, was a neglected juvenile, in that the juvenile "does not receive proper care, supervision, or discipline from the juvenile's parent" and "lives in an environment injurious to the juvenile's welfare." Furthermore, DSS recommended that it would be in TRP's best interest for DSS to have physical and legal custody of the child and for TRP to be placed with her maternal aunt.

Although the Petition was not verified by an authorized representative of DSS, it was notarized by Linda Garrett and submitted to the trial court. On 23 February 2004, the trial court, finding that it had jurisdiction over the case, concluded that there was clear and convincing evidence that TRP was in a state of neglect. The trial court placed legal and physical custody of the minor child with DSS after concluding it would be in TRP's best interest. The trial court also ordered that Parks submit to a mental health evaluation before being allowed overnight visits with TRP. Additionally, the trial court ordered that respondent-mother sign all releases and consent forms required by DSS and be more cooperative with DSS.

On 24 May 2004, a review hearing was held pursuant to N.C. Gen. Stat. § 7B-906 for the purposes of reviewing the custodial status of TRP. The trial court found that respondent-mother was more cooperative with DSS, but was currently pregnant with Russell's child, unemployed, and living in a mobile home owned by Russell's family. The trial court also found that Russell was currently incarcerated due to probation violations. Additionally, the trial court found that Parks was cooperative with DSS, receiving counseling, and had passed

seven drug tests. The trial court also found that Parks had a full-time and part-time job.

On 16 June 2004, the trial court entered an Order concluding that it would be in the best interest of TRP to remain in the legal and physical custody of DSS. However, the trial court also concluded that "it appears that return of the child to her father's home is in her best interest in the near future[.]" Additionally, the trial court concluded that when school started, TRP's physical custody would be transferred to Parks upon the express conditions that: (1) he continue counseling, (2) remain alcohol and drug free, and (3) submit to DSS a written plan for daycare. Respondent-mother appeals from this Order.

In her first assignment of error, respondent-mother contends that the trial court lacked jurisdiction to enter the review order since the initial juvenile petition was not verified as required by law. We agree.

"Jurisdiction of the court over the subject matter of an action is the most critical aspect of the court's authority to act. Subject matter jurisdiction refers to the power of the court to deal with the kind of action in question[, and] . . . is conferred upon the courts by either the North Carolina Constitution or by statute."

*In re McKinney*, 158 N.C. App. 441, 443, 581 S.E.2d 793, 795 (2003) (citations omitted). N.C. Gen. Stat. § 7B-200(a) confers on the trial court exclusive, original jurisdiction "over any case involving a juvenile who is alleged to be abused, neglected, or dependent." N.C. Gen. Stat. § 7B-200(a) (2003). " '[O]nce jurisdiction of a court attaches it exists for all time until the cause is fully and completely determined.' " *In the Matter of Arends*, 88 N.C. App. 550, 554, 364 S.E.2d 169, 171 (1988) (citation omitted) (holding that the trial court had continuing jurisdiction over all subsequent custody orders once the trial court acquired jurisdiction); N.C. Gen. Stat. § 7B-201 (2003).

"[A] court's inherent authority does not allow it to act where it would otherwise lack jurisdiction." *In re McKinney*, 158 N.C. App. at 443, 581 S.E.2d at 795. " 'A court cannot undertake to adjudicate a controversy on its own motion . . . before a court may act there must be some appropriate application invoking the judicial power of the court with respect to the matter in question.' " *Id.* at 444, 581 S.E.2d at 795 (emphasis omitted) (citation omitted). For this reason, a defense based upon lack of subject matter jurisdiction "cannot be waived and may be asserted at any time. Accordingly, the

appellants may raise the issue of jurisdiction over the matter for the first time on appeal although they initially failed to raise the issue before the trial court." *In re Green*, 67 N.C. App. 501, 504, 313 S.E.2d 193, 195 (1984) (citations omitted), *see also In re Z.T.B.*, 170 N.C. App. 564, 568, 613 S.E.2d 298, 300 (2005) (holding that when defects in a petition raise a question of the trial court's subject matter jurisdiction over the action, the issue may properly be raised for the first time on appeal).

The dissent contends that as respondent-mother appeals from a review order and not the initial custody order in this matter, the right to challenge subject matter jurisdiction has been waived, citing *Sloop v. Friberg*, 70 N.C. App. 690, 320 S.E.2d 921 (1984). However, *Sloop* does not hold that failure to appeal a complete lack of subject jurisdiction for an initial adjudication of abuse, neglect, or dependency bars a respondent from raising the lack of jurisdiction when appealing from a subsequent review of that determination. Rather, *Sloop* states that "the question of subject matter jurisdiction may be raised at any point in the proceeding, and . . . such jurisdiction cannot be conferred by waiver, estoppel or consent." *Id.* at 692-93, 320 S.E.2d at 923. The Court noted that the defendant in *Sloop* did not point to any substantive deficiencies in jurisdiction and found that general subject matter jurisdiction existed. *Id.* at 693, 320 S.E.2d at 923. *Sloop* held that the issue raised was merely whether such jurisdiction was "*properly exercised* according to the statutory requirements *in [that] particular case.*" *Id. Sloop* further stated that "[a]n *absolute want* of subject matter jurisdiction might constitute a fatal deficiency," but that grounds were available to deny a subsequent motion attacking jurisdiction in the unique case of a party who had originally agreed to a consent judgment that had been entered and acquiesced to for several years. *Id.*

Such cases are readily distinguishable from the instant case, which does not involve a consent judgment entered at the behest of both parties, but rather concerns adversarial State action to remove a child from its parent on the grounds of dependency, neglect, or abuse. Here, respondent-mother raises a substantive challenge to the trial court's subject matter jurisdiction in this case, based on the lack of verification of the original petition. "In juvenile actions, the requirement that petitions be verified is 'essential to both the validity of the petition and to establishing the jurisdiction of the court.'" *In re Triscari Children*, 109 N.C. App. 285, 288, 426 S.E.2d 435, 437 (1993) (quoting *In re Green*, 67 N.C. App. at 504, 313 S.E.2d at 195). As a ver-

ified petition is necessary to invoke the jurisdiction of the court over the subject matter for a dependency, neglect, or abuse proceeding, the court's lack of subject matter jurisdiction cannot be waived and can be raised at any time. *See Triscari,* 109 N.C. App. at 288, 426 S.E.2d at 437. Because the court may not " 'adjudicate a controversy on its own motion' " without an " 'appropriate application invoking the judicial power of the court,' " *McKinney,* 158 N.C. App. at 444, 581 S.E.2d at 795 (citation omitted), this Court must review the initial custody order to determine whether the trial court properly obtained jurisdiction over the matter.

"In the absence of a statutory requirement or rule of court to the contrary, it is ordinarily not necessary to the validity of a petition that it be signed or verified." *In re Green,* 67 N.C. App. at 503, 313 S.E.2d at 194. "On the other hand, where it is required by statute that the petition be signed and verified, these essential requisites must be complied with before the petition can be used for legal purposes." *Id.* at 503, 313 S.E.2d at 194-95.

A juvenile action, including a proceeding in which a juvenile is alleged to be abused or neglected, is commenced by the filing of a petition. N.C. Gen. Stat. § 7B-405 (2003). The pleadings relevant to an abuse, neglect, and dependency action are the petition, and it is specifically required by statute that "the petition shall be drawn by the director, verified before an official authorized to administer oaths, and filed by the clerk, recording the date of filing." N.C. Gen. Stat. § 7B-403(a) (2003).

In *Green,* this Court held that "the failure of the petitioner to sign and verify the petition before an official authorized to administer oaths rendered the petition fatally deficient and inoperative to invoke the jurisdiction of the court[.]" *Green,* 67 N.C. App. at 504, 313 S.E.2d at 195. Additionally, *Green* stated:

> The Juvenile Code requisites that the petition be signed and verified are therefore essential to both the validity of the petition and to establishing the jurisdiction of the court. The primary purpose to be served by signature and verification on the part of the petitioner is to obtain the written and sworn statement of the facts alleged in such official and authoritative form as that it may be used for any lawful purpose, either in or out of a court of law. Under the Juvenile Code, these requirements also serve to invoke the jurisdiction of the court.

IN RE T.R.P.

[173 N.C. App. 541 (2005)]

*Id.* (citation omitted). As discussed *supra,* in *In re Triscari Children,* 109 N.C. App. at 288, 426 S.E.2d at 437, this Court affirmed *Green* and held that verified pleadings in juvenile proceedings are necessary to invoke the jurisdiction of the court over the subject matter.

Verification requires a petitioner to attest "that the contents of the pleading verified are true to the knowledge of the person making the verification[.]" N.C. Gen. Stat. § 1A-1, Rule 11(b) (2003). Verification is defined as "[a] notarial act in which a notary certifies that a *signer,* whose identity is personally known to the notary or proven on the basis of satisfactory evidence, has, in the notary's presence, voluntarily signed a document and taken an oath or affirmation concerning the document." N.C. Gen. Stat. § 10A-3(9) (2003) (emphasis added). Our Supreme Court has held that notarization is insufficient to constitute verification. *See Martin v. Martin,* 130 N.C. 27, 28, 40 S.E. 822, 822 (1902) (holding that the phrase " 'sworn and subscribed to' " is defective as a verification).

Here, the Petition was notarized, the notarization reading "[s]worn and subscribed to before me." However, the Petition was neither signed nor verified by the director or an authorized representative of the director. Thus, the Petition requesting the juvenile be adjudicated neglected was not in compliance with the statute requiring that all Petitions be verified pursuant to N.C. Gen. Stat. § 7B-403, and the trial court, therefore, lacked subject matter jurisdiction to adjudicate this matter.

DSS, however, relying on *In re Mitchell,* 126 N.C. App. 432, 485 S.E.2d 623 (1997), argues the failure to sign the Petition is not fatal, because the trial court obtained jurisdiction by issuance and service of process. They contend that as the issuance and service of process were proper, the trial court had subject matter jurisdiction to enter the initial custody order finding TRP neglected.

Such reliance on *Mitchell* is misplaced. *Mitchell* does not hold that petition formalities are unnecessary to obtain jurisdiction, but rather discusses a further procedural requirement to establish subject matter jurisdiction in a juvenile action. *Id.* at 433, 485 S.E.2d at 624. The dispositive issue in *Mitchell* was whether the trial court had obtained jurisdiction when a summons was not issued, and the question of the verification of the petition was not before the Court. *Id.* at 433, 485 S.E.2d at 623. The Court in *Mitchell* recognized that a properly filed petition was the necessary first step in the trial court obtaining jurisdiction, stating that, "[a] juvenile action, including a

**IN RE T.R.P.**

[173 N.C. App. 541 (2005)]

proceeding in which a juvenile is alleged to be abused or neglected, is commenced by the filing of a petition." *Id.* at 433, 485 S.E.2d at 624. Hence, without a properly filed petition, the trial court cannot have jurisdictional authority to issue a summons. *Id.* As *Mitchell* addressed the failure to properly issue a summons rather than the formalities required of a juvenile petition, it is not controlling in this matter.

We share the dissent's concerns for the welfare of TRP, and would caution DSS to be observant as to the statutory requirements for the filing of juvenile petitions so as to avoid future errors of this nature. However, we are bound by the requirements established by our legislature and the prior decisions of this Court, which reflect a need to ensure that petitions to remove a child from the custody of their guardians be filed only when the underlying facts have been verified by the appropriate authorities. Therefore, under *Green* and *Triscari*, the failure of the director to sign and verify the Petition before the notary rendered the Petition fatally deficient and inoperative to invoke the jurisdiction of the court. As there is no evidence in the record suggesting later filings sufficient to invoke jurisdiction as to the review order, the trial court erred in proceeding on the matter due to lack of subject matter jurisdiction.

As the trial court lacked jurisdiction to enter the contested Order, we do not reach respondent-mother's remaining assignment of error.

Because the Petition was not duly verified as required by law, we conclude that the trial court lacked subject matter jurisdiction. Therefore, the Order of the trial court must be vacated and the case dismissed.

Vacated and dismissed.

Judge McGEE concurs.

Judge LEVINSON dissents in a separate opinion.

LEVINSON, Judge dissenting.

I respectfully disagree with the holding of the majority. The respondent's failure to appeal the 15 March 2004 adjudication and disposition order bars her challenge to the trial court's jurisdiction to enter the 16 June 2004 custody review order at issue. Accordingly, I dissent from the majority's holding that the trial court lacked subject matter jurisdiction to enter the custody review order.

The majority holds that the trial court lacked subject matter jurisdiction to enter the order of adjudication and disposition, on the grounds that the original petition alleging neglect did not contain a verified signature of an authorized representative of Wilkes County DSS. However, respondent did not appeal the adjudication and disposition order placing custody of T.R.P. with Wilkes County DSS. Rather, she appeals only the review order entered several months after the adjudication, which ordered that, when T.R.P.'s father met certain conditions, the child would be placed in his custody within a few months. Respondent thus attempts to raise the issue of the court's jurisdiction over the original adjudication proceeding for the first time on appeal, not from the adjudication and disposition order, but from a later order entered on custody after a proper hearing.

Respondent does not question the trial court's general jurisdiction over custody review or its authority to review dispositional orders. Her only ground for challenging the court's subject matter jurisdiction is that the petition in the earlier adjudication lacked a necessary signature. A similar issue was addressed by this Court in *Sloop v. Friberg*, 70 N.C. App. 690, 320 S.E.2d 921 (1984). In *Sloop*, the defendant challenged the trial court's exercise of jurisdiction over a custody determination only after the court had entered various custody orders over a period of years. This Court held:

> [Defendant] first challenges the district court's exercise, beginning in 1980, of subject matter jurisdiction[.] . . . It is true that the question of subject matter jurisdiction may be raised at any point in the proceeding, and that such jurisdiction cannot be conferred by waiver, estoppel or consent. . . . However, the district courts of this State do undoubtedly possess general subject matter jurisdiction over child custody disputes. . . . The real question under the Act is whether such jurisdiction is properly exercised according to the statutory requirements in this particular case. . . . The court's 1980 findings relative to the jurisdictional prerequisites . . . appear sufficient on their face to justify exercising jurisdiction. [Defendant] does not, on this appeal, point to any substantive deficiencies therein. He chose to withdraw his appeal in 1980 and to acquiesce in the judgment for several years. Accordingly, we hold that he has failed to preserve his objection and the assignment is without merit.

*Sloop*, 70 N.C. App. at 692-93, 320 S.E.2d at 923. *See also, Ward v. Ward*, 116 N.C. App. 643, 645, 448 S.E.2d 862, 863 (1994) ("Plaintiff's

sole contention on appeal is that [the trial court] lacked subject matter jurisdiction to enter the [orders] . . . plaintiff has waived his right to challenge the validity of both orders on the grounds asserted, because he could have presented the same challenges in his initial appeals which were dismissed"). Thus:

> An absolute want of jurisdiction over the subject matter may be taken advantage of at any stage of the proceedings[, but] . . . "objection to jurisdiction based on any ground other than lack of jurisdiction of the subject matter, such as . . . irregularity in the method by which jurisdiction of the particular case was obtained, is usually waived by failure to raise the objection at the first opportunity, or in due or seasonable time, or within the time prescribed by statute." 21 C.J.S., Courts, § 110.

*Pulley v. Pulley*, 255 N.C. 423, 429, 121 S.E.2d 876, 880 (1961).

I would apply the reasoning of the cases discussed above in resolving this issue. Here, respondent (1) does not challenge the court's general jurisdiction over custody review or allege jurisdictional infirmities specifically associated with the custody review proceedings and/or the resulting order, and (2) did not appeal the earlier adjudication and disposition order. She cannot, therefore, bring a belated challenge to the court's jurisdiction to enter the earlier order on abuse, neglect or dependency by attacking the present order on appeal. This collateral attack on the authority of the court to act cannot be sustained.[1]

The majority opinion relies upon appellate authorities concerning jurisdiction that are inapposite to the current appeal. While the black-letter law concepts contained in these cases cannot be seriously questioned, it is significant that all of them involve jurisdictional deficiencies in proceedings and orders that were the subject of a direct appeal. My research has not revealed any authority that supports the majority's application of the law concerning subject matter jurisdiction. Moreover, the majority holding does not comport with concepts

---

1. DSS also argues, in the alternative, that the trial court's subject matter jurisdiction also arises from its obligation to hold a review hearing because T.R.P. was removed from the parent's care. See N.C. Gen. Stat. § 7B-906(a) (2003) ("In any case where custody is removed from a parent, guardian, custodian, or caretaker the court shall conduct a review hearing within 90 days from the date of the disposition hearing and shall conduct a review hearing within six months thereafter."). The majority has not addressed this argument. I have not addressed this argument because I would conclude that the trial court had subject matter jurisdiction for the reasons discussed in this dissenting opinion.

**IN RE T.R.P.**

[173 N.C. App. 541 (2005)]

concerning judicial finality, and leaves the trial court and this child in a legal quagmire: while the order on appeal is vacated, the majority must necessarily leave the 15 March 2004 order on adjudication and disposition intact; indeed, that order is not before this Court and we are without authority to disturb it. In my view, even if the review order on appeal is reversed on some valid grounds, the earlier adjudication and disposition order unambiguously continues the child within the jurisdiction of the juvenile court. One can only wonder what the trial court is now to do, given the fact that there is a child within its jurisdiction who still needs its assistance and protection. Presumably, under the holding of the majority, the trial court is presently without the authority to do anything. But, according to the undisturbed adjudication and disposition order, the juvenile court is statutorily obligated to enter appropriate orders consistent with the ongoing needs of the child.

Absent relief from our Supreme Court, county social services entities that have supervisory responsibilities for children within the jurisdiction of the juvenile court might wish to reexamine the petition(s) which triggered their courts' jurisdiction. Indeed, children who have been in foster care for many years may need to be returned to their parents unless new petitions and associated nonsecure custody orders are issued. Like respondent-mother in the present case who did not take an appeal until she became dissatisfied with the court's decision to place the child with father, the majority holding allows interested persons in juvenile proceedings to acquiesce in the actions of the juvenile court until they become dissatisfied with the same—and then attempt to undo what they could and should have done by taking a direct appeal months and years earlier. This is, in my view, the inevitable result of the majority's misapplication of the phrase, "jurisdiction . . . can be raised at any time."

I would reject not only respondent's argument that the trial court lacked subject matter jurisdiction to enter the custody review order on appeal, but also the remaining arguments she sets forth in her brief. The order on appeal should therefore be affirmed in all respects.