639 S.E.2d 23 (2007)
In the Matter of L.B., a Minor Child.
No. COA06-483.
Court of Appeals of North Carolina.
January 2, 2007.
Jeffrey L. Miller, Greenville, for Respondent-Appellant.
E.B. Borden Parker, Goldsboro, for Petitioner-Appellee.
Amanda A. Volz, Raleigh, for Guardian ad Litem-Appellee.
STEPHENS, Judge.
Respondent-Appellant ("Respondent") is the mother of L.B., the juvenile who is the subject of this appeal.[1] By a nonsecure custody *25 order dated 17 August 2004, L.B. was taken into physical custody by the Wayne County Department of Social Services ("DSS"). The nonsecure custody order was based on a juvenile petition, signed and verified on 19 August 2004, alleging that L.B. was neglected in that she "lives in an environment injurious to [her] welfare[,]" and dependent in that her "parent, guardian, or custodian is unable to provide for [her] care or supervision and lacks an appropriate alternative child care arrangement." In particular, the petition alleged, inter alia, that
there was a sexual offender . . . living in the home and mother lied to law enforcement to protect him. . . . During the time of DSS investigation it was learned that L.B. was being medicated by the mother with the mother's medication. After the child was seen and prescribed her [own] medication mother was using L.B.'s medication as well as her own to double medicate the child. DSS has confirmed that Josh Ryan a known sex offender from Illinois has been residing in the home. According to what DSS has learned L.B. has had emotional problems since Josh has been involved with the mother. . . . L.B. indicated that she feels uncomfortable in the presence of Josh and is afraid of how he will react. L.B. states that Josh has sung sexually explicit songs in her presence and made statements to her such as "he is tired of being a screw buddy with her mother."
L.B. currently lives with Steven and Doris Johnson, R.B.'s paternal grandfather and paternal step-grandmother, with whom she was placed in custody by order filed 23 December 2004. On 27 October 2005, a permanency planning hearing was held before the Honorable R. Les Turner in Wayne County District Court. At that hearing, the evidence tended to show the following:
Tammy Oxendine, a foster care social worker for DSS, testified that during a previous hearing, on 8 August 2005, Respondent provided DSS with her alleged home address and a telephone number for her employer. However, when Ms. Oxendine attempted to verify this information, she learned that Respondent did not live at the address she provided, and that her employer's phone had been disconnected. Ms. Oxendine testified further that she had had contact with Respondent since the 8 August 2005 hearing, but Respondent never informed her that her address had changed or that her employer's phone had been disconnected.
Respondent testified that she had provided DSS her current address and that she has received mail from DSS at her current residence. She also indicated that she provided DSS with her telephone contact numbers, including a number for a cellular phone. Her new residence, in which she has lived for four months, has three bedrooms, a living room, a kitchen, and a bathroom. It is a wood and brick structure and she lives in the home with her father, when he is in Wayne County. Respondent testified that R.B. and A.M. each would have their own bedroom in the house, but Respondent omitted any reference to a bedroom in the house for L.B. Respondent testified further that she works at a laundry business called the Laundry Room, and that Ms. Oxendine could not locate the business because it is in the process of relocating to Wilson County. Although the Laundry Room is changing locations, Respondent's continued employment has been confirmed by her employer. Overall, Respondent feels that she is able to care for her children.
With regard to visitation the testimony indicated that, during a supervised visit three weeks earlier, Respondent left before the visit could begin because, according to Respondent, "Mrs. Johnson would not let her have any contact with the children and . . . was embarrassing her in front of other people at the park[.]" During her testimony, Ms. Oxendine explained that Mrs. Johnson would not allow the children to visit with Respondent because the court had required supervised visitation and a DSS worker had yet to arrive. More generally, Ms. Oxendine indicated that "[s]ome of the visits have gone *26 very well[;]" however, there have also been occasions when L.B. has not participated. At times, L.B. has informed Ms. Oxendine that she does not want to attend and, at other times, has attended but has not interacted with Respondent. During her last two visits, L.B. has informed Ms. Oxendine that she desired to be with the Johnsons. L.B. seems bonded with the Johnsons and seems to be happy to have some stability in her life. Respondent testified that she has had sporadic visits with her children, and that her phone contact with her children has been reduced over time.
By previous court order, Respondent was required to complete individual therapy, attend anger management, complete a psychological evaluation, maintain stable housing, and maintain employment. By the time of the hearing, she had completed most requirements, but had failed to complete a psychological evaluation. Ms. Oxendine testified that she was recommending guardianship of the children, rather than reunification with Respondent, because Respondent had not completed a psychological evaluation and because she could not determine whether Respondent's housing situation was stable or whether she was employed.
With regard to the psychological evaluations, Respondent testified that, although her evaluator had difficulty acquiring information from DSS, she took a psychological test but the evaluator informed her that "it wouldn't be in [her] best interest for him to submit anything." Since then, Respondent has made an appointment for a psychological evaluation with another service provider, called Eastpointe, but the woman with whom she made the appointment subsequently went on maternity leave. Respondent has taken no further action to comply with the court orders on this issue since March or April 2005.
Ms. Oxendine testified further that the agency was recommending guardianship of L.B. with the Johnsons and that although they are not "blood relatives" to all of the children, they do not treat L.B. or A.M. differently than they treat R.B. At the end of the hearing, Judge Turner entered a permanency planning order in which he determined that the permanent plan regarding L.B. would change from reunification with Respondent to guardianship with the Johnsons. From this order, Respondent appeals. We affirm the order in part, vacate the order in part, and remand the case to the trial court.
As a preliminary matter, we must address motions filed by guardian ad litem-Appellee and Respondent. On 26 June 2006, Respondent filed her "Motion to Dismiss Guardian's Brief; Motion to Strike Portions of Guardian's Brief" and, on the same day, the guardian ad litem filed a "Motion to Deem Appellee GAL's Brief Timely Served[.]" In support of her motion, the guardian ad litem explained that her misinterpretation of the Rules of Appellate Procedure led to her failure to timely serve her brief upon Respondent as required by rule. Respondent argues that the guardian ad litem's brief should be dismissed or stricken in part because (1) she was not timely served with the guardian ad litem's brief, (2) there has been no order appointing the guardian ad litem's attorney to appear as counsel, and (3) the guardian ad litem's brief contains an improper statement of facts.
First, we address the guardian ad litem's failure to timely serve her appellate brief on Respondent. Under Rule 13 of the North Carolina Rules of Appellate Procedure,
(a). . . .
(1) [w]ithin 30 days after appellant's brief has been served on an appellee, the appellee shall similarly file and serve copies of his brief.
. . . .
(c) If an appellee fails to file and serve his brief within the time allowed, he may not be heard in oral argument except by permission of the court.
N.C. R.App.P. 13(a)(1); 13(c). In this case, Respondent's brief was served on the guardian ad litem, by mail, on 10 May 2006. Rule 27 of the North Carolina Rules of Appellate Procedure provides that "[w]henever a party has the right to do some act or take some proceeding within a prescribed period after the service of a notice or other paper upon *27 him and the notice or paper is served upon him by mail, three days shall be added to the prescribed period." N.C. R.App. P. 27(b). Therefore, under Rule 13 and Rule 27, the guardian ad litem was required to serve her brief on Respondent by 12 June 2006. The guardian ad litem's brief was timely filed in this Court, but was not served on Respondent until 26 June 2006, in clear violation of Rule 13, thus subjecting the guardian ad litem-appellee to appropriate sanctions. As this case, pursuant to Rule 30(f), was not scheduled for oral argument, the appropriate sanction under Rule 13 (disallowing oral argument of appellee whose brief is not timely filed and served) is not applicable. Therefore, we may only impose sanctions, including striking the brief, under Rule 25 and Rule 34.
This Court does not treat every violation of the Rules of Appellate Procedure with a blunt instrument that eviscerates the work of an offending attorney, and potentially harms an innocent party. Rather, we examine violations of the Rules with a cautious eye and with the objective of promoting justice. Since this case deals with guardianship of a juvenile and because Respondent did not allege that she suffered any prejudice from the minimal delay in being served with the guardian ad litem's brief, we choose not to impose sanctions upon the guardian ad litem's counsel, although we urge her to heed the Rules of Appellate Procedure. Therefore, the guardian ad litem's "Motion to Deem Appellee GAL's Brief Timely Served" is allowed, and Respondent's "Motion to Dismiss Guardian's Brief[,]" on Rule 13 grounds, is denied.
Next, Respondent argues that because there has been no order appointing this particular attorney to appear as appellate counsel for the guardian ad litem, her brief should be dismissed. Under the North Carolina Juvenile Code,
[w]hen in a petition a juvenile is alleged to be abused or neglected, the court shall appoint a guardian ad litem to represent the juvenile. When a juvenile is alleged to be dependent, the court may appoint a guardian ad litem to represent the juvenile. . . . The appointment shall terminate when the permanent plan has been achieved for the juvenile and approved by the court. . . . In every case where a nonattorney is appointed as a guardian ad litem, an attorney shall be appointed in the case in order to assure protection of the juvenile's legal rights throughout the proceeding.
N.C. Gen.Stat. § 7B-601(a) (2003). In this case, by order dated 30 August 2004, Tim Finan was named the attorney advocate for the juvenile. While there is no order in the record naming the guardian ad litem's current counsel as appellate counsel, both Respondent and the guardian ad litem agree that a "Notice of Appearance of Counsel" was filed at this Court. Therefore, the guardian ad litem's attorney is properly appearing in this case, and Respondent's motion to dismiss the guardian ad litem's brief on this basis is likewise denied.
Finally, Respondent argues that the guardian ad litem's brief should be dismissed or stricken in part because the statement of facts includes information not found by the trial court and contains misrepresentations regarding the underlying facts of this case.
The North Carolina Rules of Appellate Procedure require the statement of facts included in an appellate brief to contain
[a] full and complete statement of the facts. This should be a non-argumentative summary of all material facts underlying the matter in controversy which are necessary to understand all questions presented for review, supported by references to pages in the transcript of proceedings, the record on appeal, or exhibits, as the case may be.
N.C. R.App. P. 28(b)(5). Plainly read, this Rule does not limit a party's ability to make reference to facts, supported by the evidence but not specifically found by the trial court, to be able to provide this Court with a thorough picture of the circumstances and events that led to the appeal. Additionally, Respondent cites no authority, and our research reveals none, which limits a party's statement of facts to those found by the trial court. Because the guardian ad litem's statement of facts is supported by both the transcript and Record on Appeal, we believe that the brief conforms to the guidelines *28 established by Rule 28. Accordingly, Respondent's "Motion to Dismiss Guardian's Brief; Motion to Strike Portions of Guardian's Brief[,]" on Rule 28 grounds, is also denied.
On 23 August 2006, Respondent also filed a "Motion to Dismiss and Strike Petitioner-Appellee DSS' [sic] Brief[.]" In support of this motion, Respondent contends that because the brief submitted by DSS "was not timely filed or served, and no extension of time for filing was granted by the Court of Appeals[,]" the brief should be stricken and dismissed. We are not persuaded to take this drastic action.
Respondent's brief was served on DSS, by mail, on 10 May 2006. Therefore, under Rule 13 and Rule 27, DSS was required to serve its brief on Respondent by 12 June 2006. However, DSS's brief was not filed in this Court until 3 July 2006 and was not served on Respondent until 30 June 2006, in clear violation of Rule 13, thus subjecting DSS to appropriate sanctions. Once again, however, as this case was not scheduled for oral argument, the appropriate sanction under Rule 13 is not applicable. Therefore, we may only impose sanctions, including striking the brief, under Rule 25 and Rule 34.
While this Court takes violations of the appellate rules very seriously, because this case deals with guardianship of a juvenile and because Respondent did not allege that she suffered any prejudice from the delay in being served with DSS's brief, we choose not to impose sanctions upon DSS's counsel. However, we caution DSS's attorney that the proper approach would have been to move the Court for an extension of time in which to file and serve the brief or, alternatively, to move the Court to deem the brief timely filed and served. Respondent's "Motion to Dismiss and Strike Petitioner-Appellee DSS' [sic] Brief[,]" on Rule 13 grounds, is denied.
In the same motion, Respondent argues that because DSS provides and cites to an affidavit not included in the Record on Appeal, DSS's brief should be dismissed or stricken in part. We agree.
Rule 9 of the North Carolina Rules of Appellate Procedure states:
In appeals from the trial division of the General Court of Justice, review is solely upon the record on appeal, the verbatim transcript of proceedings, if one is designated, constituted in accordance with this Rule 9, and any items filed with the record on appeal pursuant to Rule 9(c) and 9(d). Parties may cite to any of these items in their briefs and arguments before the appellate courts.
N.C. R.App. P. 9(a). "Matters discussed in the brief outside the Record are not properly considered on appeal since the Record imports verity and binds the reviewing court." In re Norris, 65 N.C.App. 269, 274, 310 S.E.2d 25, 28 (1983) (citing State v. Hedrick, 289 N.C. 232, 221 S.E.2d 350 (1976)), cert denied, 310 N.C. 744, 315 S.E.2d 703 (1984).
In this case, at the end of its brief, DSS included as an exhibit an affidavit from Jennifer Watson, a DSS social worker. Additionally, DSS cited to this affidavit in its brief. As this affidavit was not included in the settled record, it was inappropriate, under Rule 9, for DSS to provide and then rely on this document. In its response to the motion, DSS directs our attention to Rule 28(d)(3)(a), arguing that because DSS would have been required to provide omitted portions of a transcript, it follows that DSS could provide documents omitted from the settled record. We find DSS's argument to be without merit. Rule 28(d)(3)(a) only addresses information from a transcript that must be included in an appendix; there is no reference in the rule to information omitted from the record. Moreover, we find DSS's argument unsupported by any rule of appellate procedure. Accordingly, we strike the included affidavit and all references made to the information contained in the affidavit from DSS's brief.
We turn our attention now to Respondent's appeal from Judge Turner's permanency planning order. Respondent first contends that the trial court was without subject matter jurisdiction to enter that order because the mandatory process for acquiring jurisdiction was not met. Specifically, Respondent argues that because the nonsecure *29 custody order and summons were issued before the juvenile petition was signed and verified, the trial court lacked authority to enter the custody order.
Under North Carolina law, in juvenile proceedings, "[a]n action is commenced by the filing of a petition in the clerk's office when that office is open or by the issuance of a juvenile petition by a magistrate when the clerk's office is closed, which issuance shall constitute a filing." N.C. Gen.Stat. § 7B-405 (2003). Further,
[a]ll reports concerning a juvenile alleged to be abused, neglected, or dependent shall be referred to the director of the department of social services for screening. Thereafter, if it is determined by the director that a report should be filed as a petition, the petition shall be drawn by the director, verified before an official authorized to administer oaths, and filed by the clerk, recording the date of filing.
N.C. Gen.Stat. § 7B-403(a) (2003). In support of her argument that the failure of DSS personnel to sign and verify the juvenile petition until after the nonsecure order was filed renders the trial court's subsequent orders invalid, Respondent directs our attention to In re Green, 67 N.C.App. 501, 313 S.E.2d 193 (1984). In Green, this Court determined that the trial court did not have subject matter jurisdiction because the juvenile petition was not signed and verified as required by the controlling statute of that time. Id. However, Green is readily distinguishable from the case that is currently before this Court. Unlike Green, where the petition was never signed and verified, in this case, on 19 August 2004, two days after the order for nonsecure custody was filed, the petition was signed and verified. Since Green is not directly on point, it does not control.
In In re T.R.P., 173 N.C.App. 541, 546, 619 S.E.2d 525, 529 (2005), aff'd, 360 N.C. 588, 636 S.E.2d 787 (2006), this Court again vacated a juvenile order because "the Petition was neither signed nor verified by the director or an authorized representative of the director." However, the T.R.P. Court left open the possibility that DSS could take remedial action which, in turn, could provide the trial court with subject matter jurisdiction. Specifically, the T.R.P. Court stated, "[a]s there is no evidence in the record suggesting later filings sufficient to invoke jurisdiction as to the review order, the trial court erred in proceeding on the matter due to lack of subject matter jurisdiction." Id. at 547, 619 S.E.2d at 529 (emphasis added).
The circumstance that the Green court foresaw exists here. In this case, the order for nonsecure custody was filed 17 August 2004 and summons was issued 18 August 2004. However, the juvenile petition was not signed and verified until 19 August 2004. Therefore, under N.C. Gen.Stat. § 7B-403, N.C. Gen.Stat. § 7B-405, Green, and T.R.P., the trial court did not have jurisdiction when the order for nonsecure custody was filed and summons was issued. Unlike both Green and T.R.P., here the juvenile petition was eventually signed and verified by a DSS representative. Once this occurred on 19 August 2004, the trial court gained subject matter jurisdiction and could properly act on this matter from that day forward. Therefore, the trial court had authority to enter its permanency planning order. This assignment of error is overruled.
Respondent next argues that the trial court committed reversible error by failing to conduct the permanency planning hearing within twelve months of the date of the original custody order, that is, in August, rather than October, 2005.
In North Carolina,
[i]n any case where custody is removed from a parent, guardian, custodian, or caretaker, the judge shall conduct a review hearing designated as a permanency planning hearing within 12 months after the date of the initial order removing custody[.]
N.C. Gen.Stat. § 7B-907(a) (2005). In In re C.L.C., 171 N.C.App. 438, 443, 615 S.E.2d 704, 707 (2005) (citing In re J.L.K., 165 N.C.App. 311, 598 S.E.2d 387, disc. review denied, 359 N.C. 68, 604 S.E.2d 314 (2004)), aff'd and disc. review improvidently allowed, 360 N.C. 475, 628 S.E.2d 760 (2006), this Court determined that "time limitations in *30 the Juvenile Code are not jurisdictional . . . and do not require reversal of orders in the absence of a showing by the appellant of prejudice resulting from the time delay." More specifically, this Court has previously determined that an appellant must prove prejudice to warrant reversal for a violation of N.C. Gen.Stat. § 7B-907(e), which governs time lines for filing petitions to terminate parental rights. In re As.L.G., 173 N.C.App. 551, 619 S.E.2d 561 (2005), disc. review improvidently allowed, 360 N.C. 476, 628 S.E.2d 760 (2006). While the case currently before us involves a violation of N.C. Gen. Stat. § 7B-907(a), and not section 7B-907(e), we are persuaded by the rationale underlying the decision in As.L.G. and thus hold that, in order to warrant reversal of a trial court's permanency planning order for a violation of section 7B-907(a), an appellant must demonstrate prejudice.
Whether a party has adequately shown prejudice is always resolved on a case-by-case basis; however, determining prejudice is not a rubric by which this Court vacates or reverses an order when, in our opinion, the order is not in the child's best interest. Nor is prejudice, if clearly shown by a party, something to ignore solely because the remedy of reversal further exacerbates the delay.
Id. at 554, 619 S.E.2d at 564.
In her brief to this Court, Respondent alleges that because of the two-month delay in holding the permanency planning hearing, and because DSS did not make an adequate effort to evaluate her current living situation, she was prejudiced. In particular, Respondent argues that "[h]ad the hearing been held in a timely manner, [her] home properly could have been considered and in-home visits could have been scheduled and suitable assessments made before DSS and the GAL changed their recommendations about reunification as the permanent plan." Additionally, Respondent contends that the trial judge relied on evidence gathered after the twelve-month time frame had expired to change the permanent plan. Specifically, Respondent asserts that (1) between the time the permanency planning review hearing should have been held and when it was actually held, her two younger children reversed their positions and decided that they did not want to live with Respondent, and (2) both DSS and the guardian ad litem changed their recommended plans from reunification of Respondent and her children to guardianship of the children with the Johnsons. We disagree that Respondent has thereby proved prejudice.
With regard to Respondent's current living situation, the evidence presented at the hearing indicated that Respondent's living arrangement had been steady for four months. Had the permanency planning hearing been held in August, as Respondent contends it should have been, Respondent's living situation would have been less stable because the hearing would have occurred during Respondent's transition from her old home to her new one. Additionally, although Respondent testified that she currently lives in a three-bedroom house and specifically mentioned having space for L.B.'s siblings, she did not testify that she has a room in the house dedicated for use by L.B. This is the testimony on which Judge Turner relied when he found that "in describing the home where she now lives, the mother stated that her father stayed with her when he is in Wayne County and that she had room for half-siblings of this juvenile. The mother did not mention having room or space for this juvenile [L.B.]" Therefore, Respondent's argument that the delay caused her prejudice in the trial court's evaluation of her domestic situation is without merit.
As for Respondent's assertion that the trial judge based his decision on evidence that arose after the twelve-month time period, we likewise perceive no prejudice. Although more recent evidence was presented at the hearing, the trial court made no findings regarding L.B.'s half-siblings' alleged change in their position on their permanent placement, and there was no evidence presented that the guardian ad litem or DSS changed their recommendation on L.B.'s placement based on anything that occurred after the twelve-month time frame had expired. While the court included a finding that Respondent had prematurely left a scheduled visit with the juveniles three weeks before *31 the hearing, we believe that, absent this finding, there remained ample evidence to support the trial court's determination. Therefore, in this respect as well, Respondent has not adequately demonstrated prejudice.
Respondent further argues that the trial court failed to make sufficient findings of fact to support its permanency planning order, as required by N.C. Gen.Stat. § 7B-907(b). Specifically, Respondent contends that the trial court erred by failing to make findings on: (1) why it was not in L.B.'s best interest to be returned home, (2) why guardianship with a relative or other suitable person should or should not be established, (3) whether L.B. should remain in her current placement or be placed elsewhere once the court determined that it was unlikely she would be returned home within six months, and (4) whether DSS made reasonable efforts to implement the permanent plan for L.B.
In permanency planning proceedings, North Carolina law requires the following:
At the conclusion of the hearing, if the juvenile is not returned home, the court shall consider the following criteria and make written findings regarding those that are relevant:
(1) Whether it is possible for the juvenile to be returned home immediately or within the next six months, and if not, why it is not in the juvenile's best interests to return home;
(2) Where the juvenile's return home is unlikely within six months, whether legal guardianship or custody with a relative or some other suitable person should be established, and if so, the rights and responsibilities which should remain with the parents;
(3) Where the juvenile's return home is unlikely within six months, whether adoption should be pursued and if so, any barriers to the juvenile's adoption;
(4) Where the juvenile's return home is unlikely within six months, whether the juvenile should remain in the current placement or be placed in another permanent living arrangement and why;
(5) Whether the county department of social services has since the initial permanency plan hearing made reasonable efforts to implement the permanent plan for the juvenile;
(6) Any other criteria the court deems necessary.
N.C. Gen.Stat. § 7B-907(b) (2005). In In re J.C.S., 164 N.C.App. 96, 106, 595 S.E.2d 155, 161 (2004), overruled on other grounds by In re R.T.W., 359 N.C. 539, 614 S.E.2d 489 (2005), superceded by statute as stated in In re T.R.P., 360 N.C. 588, 636 S.E.2d 787 (2006) this Court determined that this section of the Juvenile Code does not require a permanency planning order to contain a formal listing of the § 7B-907(b)(1)-(6) factors, "as long as the trial court makes findings of fact on the relevant § 7B-907(b) factors[.]" Based on our review of Judge Turner's permanency planning order, we believe that he considered all the relevant section 7B-907(b) criteria and made appropriate findings in his order regarding them. In his permanency planning order, Judge Turner made the following relevant findings of fact:
14. That the mother has been ordered to undergo a psychological evaluation but has not done so.
15. That the mother went to Dr. Scott Allen, but Dr. Allen did not complete the psychological evaluation although he administered some tests. The mother informed the Court that she had taken other tests. The mother called to make an appointment at Eastpointe for a psychological evaluation but . . . the person with whom she had an appointment was on maternity leave. The mother believes this was done in March or April of 2005, and she has not been contacted again by Eastpointe, nor has she contacted Eastpointe to see if the individual has returned from maternity leave or whether there is someone else that can conduct the evaluation.
. . . .
19. That in describing the home where she now lives, the mother stated that her father stayed with her when he is in Wayne County and that she had *32 room for half-siblings of this juvenile. The mother did not mention having room or space for this juvenile.
. . . .
26. That the juvenile has no interest in having visits with the mother at this time.
. . . .
29. That it does not appear to the Court that the mother has conquered her anger problems.
. . . .
32. That the juvenile is well bonded with the current custodians who are the grandparents of one of the half-siblings of this juvenile.
33. That Steven and Doris Johnson are fit and proper persons to have the continued custody of the juvenile and to be designated as the guardian of the juvenile.
34. That the petitioner recommends that the permanent plan for the juvenile be changed from reunification to placement and guardianship with Steven and Doris Johnson.
. . . .
36. That the Johnsons have added two bedrooms to their home to ensure that the juvenile and the half-siblings of the juvenile have a place with them.
These findings are sufficient to meet the requirements under N.C. Gen.Stat. § 7B-907(b). Specifically, we hold that (1) the requirements under section 7B-907(b)(1) are met by findings of fact 14, 15, 19, 26, and 29; (2) the requirements under section 7B-907(b)(2) are met by findings of fact 32, 33, and 34; (3) the requirements under section 7B-907(b)(3) are implicitly met by findings of fact 32, 33, and 34; and (4) the requirements under section 7B-907(b)(4) are met by findings of fact 32, 33, 34, and 36.
With respect to Respondent's argument that the trial court erred by not making any findings under N.C. Gen.Stat. § 7B-907(b)(5), we hold that because this was the initial permanency planning hearing, there was no permanent plan with which DSS had to comply. Respondent's arguments regarding the sufficiency of the trial court's findings are without merit.
However, Respondent additionally argues that the trial court erred in the visitation decision it made, by determining "[t]hat visitation between the juvenile and the mother shall be supervised by the custodians and shall be in the discretion of the custodians, but shall not be unreasonably prevented." We agree and therefore remand this case to the trial court to amend the order.
In In re Stancil, 10 N.C.App. 545, 552, 179 S.E.2d 844, 849 (1971), this Court held that "when visitation rights are awarded, it is the exercise of a judicial function. We do not think that the exercise of this judicial function may be properly delegated by the court to the custodian of the child." The rationale underlying this decision is that when the discretion to provide visitation is granted to the custodian of a child, it may "result in a complete denial of the right[.]" Id. Based on the direction provided by this Court in Stancil, we hold that the trial court erred by leaving visitation within the discretion of the Johnsons. We thus vacate that portion of the court's permanency planning order and remand this case to the trial court to issue a new order on visitation between Respondent and L.B. consistent with this opinion and the Stancil holding.
By her next argument, Respondent contends that the trial court erred by considering and incorporating reports and summaries from DSS and from the guardian ad litem as a finding of fact in its order. Respondent argues that the trial court included findings from DSS reports that "were patently incorrect because each DSS report was simply a template copy restating information from past reports[,]" and that "the actual findings stated by the Court without the incorporat[ed] finding[s] are insufficient under 7B-907 to cease reunification efforts and to establish guardianship." We find this argument without merit.
In North Carolina,
[a]t any permanency planning review, the court shall consider information from the *33 parent, the juvenile, the guardian, any foster parent, relative, or preadoptive parent providing care for the child, the custodian or agency with custody, the guardian ad litem, and any other person or agency which will aid it in the court's review.
N.C. Gen.Stat. § 7B-907(b) (2005). When conducting a juvenile proceeding, the trial court is permitted to consider all materials, including written reports, that have been submitted in connection with the proceeding. In re J.S., 165 N.C.App. 509, 598 S.E.2d 658 (2004). However, "the trial court may not delegate its fact finding duty." Id. at 511, 598 S.E.2d at 660 (citing In re Harton, 156 N.C.App. 655, 577 S.E.2d 334 (2003)). Specifically, "the trial court should not broadly incorporate these written reports from outside sources as its findings of fact." J.S., 165 N.C.App. at 511, 598 S.E.2d at 660.
In this case, Respondent argues generally that the trial court erred by incorporating the DSS and guardian ad litem reports and that "[i]t is difficult to assess how much weight the court gave in its decision and disposition to those matters . . . which were purportedly read and incorporated in the order, but which were not articulated in its order." Respondent's argument is without merit. We hold that the trial court properly incorporated DSS and guardian ad litem reports and properly made findings of fact, included in the permanency planning order, based on these reports. Moreover, these findings are sufficient to support the trial court's ultimate determination, and there is no evidence that Judge Turner relied on information from the reports that he then failed to include as a finding of fact in his order. Accordingly, this assignment of error is overruled.
Respondent next argues that the trial court's finding "[t]hat the mother of the juvenile has not complied with previous orders of the Court to keep the juvenile away from Josh Ryan" was not supported by the evidence presented at the 27 October 2005 hearing and that, by relying on prior court orders, DSS reports and guardian ad litem reports, the trial court unfairly prejudiced Respondent's rights.
In the juvenile petition, DSS alleged that Josh Ryan, "a sexual offender from another state [was] living in the home [with L.B.] and [Respondent] lied to law enforcement to protect him." The petition further alleged that "L.B. indicated that she feels uncomfortable in the presence of Josh[,] . . . Josh has sung sexually explicit songs in her presence and made statements to her such as `he is tired of being a screw buddy with her mother.'" Respondent's relationship with Josh Ryan, and the concern expressed by DSS regarding his presence around L.B., is documented in court reports and orders contained in the record on appeal.
Although Respondent is correct in her assertion that no new evidence was presented at the hearing regarding her current relationship with Josh Ryan and his presence around L.B., we believe that this finding merely indicates that Respondent had not previously complied with court orders requiring her to eliminate contact between Josh Ryan and L.B. In its finding that Respondent failed to comply with the prior court order, the trial court simply recognized that Respondent had placed the importance of her relationship with Josh Ryan above the welfare of her child. This finding was proper and relevant to the trial court's determination.
Additionally, had the trial court included this finding in error, we believe that, absent this finding, there remained sufficient evidence presented through court documents in the record and by testimony at the hearing to support the trial court's ultimate determination that the permanent plan for L.B. should be a change of custody, with the Johnsons being designated her guardians. Accordingly, we find Respondent's argument without merit.
By her final argument, Respondent contends that the trial court abused its discretion in ordering her to undergo a psychological evaluation and erred by finding that she had not previously complied with the trial court's order directing such an evaluation.
Under North Carolina law,

*34 [a]t the dispositional hearing or a subsequent hearing the court may determine whether the best interests of the juvenile require that the parent . . . undergo psychiatric, psychological, or other treatment or counseling directed toward remediating or remedying behaviors or conditions that led to or contributed to the juvenile's adjudication or the court's decision to remove custody of the juvenile from the parent[.] If the court finds that the best interests of the juvenile require the parent . . . [to] undergo treatment, it may order that individual to comply with a plan of treatment approved by the court or condition legal custody or physical placement of the juvenile with the parent . . . upon [the parent's] compliance with the plan of treatment.
N.C. Gen.Stat. § 7B-904(c) (2005). In In re Cogdill, 137 N.C.App. 504, 528 S.E.2d 600 (2000), this Court determined that a trial court properly ordered a parent to undergo a psychological evaluation when it was determined that the parent was aware that her daughter was being abused and did not tell the truth in court regarding the abuse.
In this case, in the 19 August 2004 petition, the allegations levied by DSS against Respondent included claims that Respondent was double medicating L.B. and that she placed her daughter in a compromising position by living with a sex offender, who made inappropriate comments of a sexual nature to the juvenile. Respondent then compounded this problem by lying to law enforcement to protect the sex offender. Further, during the 29 November 2004 hearing, "the mother admitted that at the time of the filing of the petition, the juvenile was a neglected and dependent juvenile and that there is a factual basis to make such a finding." Based on the serious nature of these allegations, Respondent's concession that her daughter was neglected, and this Court's holding in Cogdill, we hold that the trial court did not err in ordering Respondent to undergo a psychological evaluation.
Additionally, at the hearing, Respondent's own testimony supported the trial court's determination that Respondent had failed to comply with the court's previous order that she undergo a psychological or psychiatric evaluation and comply with the recommendations of the evaluator. Therefore, we overrule this assignment of error.
AFFIRMED IN PART, VACATED IN PART, AND REMANDED.
Judges STEELMAN and GEER concur.
The judges concurred and submitted this opinion for filing prior to 31 December 2006.
NOTES
[1] Respondent is also the mother of two additional juveniles, R.B. and A.M., who are the subject of an appeal in COA06-484. Although the appeals regarding L.B. and her siblings were filed separately, there was only one hearing at the trial court that resolved the issues for all three juveniles.