In re: T.K., D.K., T.K., and J.K., Minor Children

No. COA04-196

(Filed 21 June 2005)

**1. Child Abuse and Neglect— permanency planning hearing— consideration of parent's progress**

A mother's progress toward correcting the conditions which had led to the removal of her neglected children was considered by the trial court at a permanency planning hearing, but was not sufficient for the return of the children.

**2. Child Abuse and Neglect— primary focus—best interests of children—progress of parents**

The trial court did not err when ceasing reunification efforts between a mother and neglected children by focusing on the best interests of the children rather the mother's progress. While the parent's right to maintain the family must be considered, at this stage the children's best interests are paramount.

Judge Tyson concurring in part and dissenting in part.

Appeal by respondent from an order dated 31 October 2003 by the Honorable Lisa C. Bell in Mecklenburg County Juvenile District Court. Heard in the Court of Appeals 21 October 2004.

*Tyrone C. Wade for Mecklenburg County Department of Social Services, petitioner-appellee.*

*Michael E. Casterline for respondent-appellant mother.*

BRYANT, Judge.

W.K.[1], (respondent-mother) appeals from a permanency planning order dated 31 October 2003 granting guardianship of T.K., D.K., and T.K. to the maternal aunt (C.C.) and a plan for reunification of J.K., the youngest child, with either or both parents.

1. Initials are used throughout to protect the identity of the juveniles.

**IN RE T.K., D.K., T.K. & J.K.**

[171 N.C. App. 35 (2005)]

On 7 May 2002 the Mecklenburg County Department of Social Services (DSS) initiated juvenile petitions alleging three minor children (T.K. age 12, D.K. age 10, and T.K. age 3) were neglected and dependent. At the time the juvenile petitions were filed, the children were living in a motel with their mother, stepfather, maternal aunt and cousin, as the family had been evicted from their home. On 6 September 2002, DSS initiated another juvenile petition alleging that newborn J.K. (born 5 September 2002) was a neglected and dependent child as J.K. tested positive for cocaine at birth. The court granted DSS non-secure custody of all the children.

On 17 July 2002 at the adjudicatory hearing, T.K., D.K., and T.K. were determined to be neglected and dependent juveniles, based on a number of findings by the trial court.[2] After a dispositional hearing on 22 August 2002, wherein the court approved a plan of reunification, on 29 October 2002, the court conducted an adjudication hearing as to J.K. and a review hearing as to T.K., D.K., and T.K. J.K. was adjudicated neglected and dependent. The plan for T.K., D.K., and T.K. was changed from reunification to termination of parental rights and adoption. At that time, the court found:

> The following progress has been made towards alleviating and mitigating the problems that necessitated placement: parents have a serious substance abuse problem which affects their ability to care for children . . . [p]arents have complied with some of plan goals but insufficient progress for children to be returned to them.

Thereafter, at the permanency planning hearing almost one year later on 16 October 2003, the court found that efforts to reunite T.K., D.K., and T.K. would have been futile and inconsistent with their health, safety, and need for a permanent home within a reasonable time. The court, however, continued the permanent plan of reunification for J.K.

Respondent-mother raises two issues on appeal from the permanency planning order: whether the trial court erred in ceasing reunification with the three older children when (I) the respondent-mother had made progress toward correcting conditions that led to the removal of the minor children and (II) the primary focus was on how well the children were doing in their placement rather than the progress of the parents. Respondent-mother's six remaining assign-

---

2. The trial court order was signed and entered 9 August 2002.

ments of error are not argued in her brief and are therefore deemed abandoned. N.C. R. App. P. 28(a); *McManus v. McManus*, 76 N.C. App. 588, 591, 334 S.E.2d 270, 272 (1985).

I

[1] In her first assignment of error, respondent-mother alleges the trial court erred in failing to consider her progress to reunite her and her three minor children. We disagree.

Pursuant to N.C.G.S. § 7B-907(c), the court is required to make findings regarding the "best plan of care to achieve a safe, permanent home for the juvenile within a reasonable period of time." N.C. Gen. Stat. § 7B-907(c) (2003). In determining the best plan, the court must consider several factors, including but not limited to, how long DSS has provided efforts to the family before non-secure custody is obtained. *Id.* The court must also consider any substantial change after non-secure custody is obtained. *Id.* N.C.G.S. § 7B-507(a) requires the court to make a finding of reasonable efforts at each hearing. N.C. Gen. Stat. § 7B-507(a) (2003). "[T]he court may direct that reasonable efforts to eliminate the need for placement . . . shall cease if the court makes written findings of fact that . . . [s]uch efforts clearly would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time." N.C. Gen. Stat. § 7B-507(b)(1) (2003).

The court's relevant findings are:

2. That the parents have made some progress since the adjudication; however, progress began after a period of time. The respondent father has entered into substance abuse treatment and has maintained sobriety. Since entering, his urinalyses have been negative. He has secured employment; however, does not have housing. . . .

3. That respondent mother has submitted NA/AA forms to this [c]ourt. . . . The mother maintains she is substance abuse free; however, she tested positive for marijuana four months ago. The mother has employment, but does not yet have housing. . . .

4. That the mother has had seven (7) negative random urinalyses. The most recent sample was negative as well. However, based on the history of this case and the fact that the mother tested positive for controlled substances as

recently as four months ago and has attended visits with someone who smells of alcohol suggest to this [c]ourt there are still concerns regarding the mother's stability.

. . .

21. That [the stepfather, J.L.] has made greater progress than [the mother]; however, the [c]ourt does not find that six more months will make it more likely that his [youngest daughter, T.K.] could or should be removed from the household where she has resided for over a year. The [c]ourt specifically finds to the contrary that six more months will serve to strengthen that home environment and relationship for [the daughter]. The [c]ourt specifically finds there is a greater chance [the stepfather] can assume custody of [J.K.] within six months than [T.K.] if he continues to make progress.

22. That the mother is given credit for addressing her addiction and the efforts made to change her life which is difficult; however, the time line in the life of the children is not the same as that of an adult. One and a half years in the life of a child is vastly different than that of an adult. Children cannot wait for parents to get their lives together, get sober and do the things necessary to be an adequate parent.

Clearly the court considered that some progress had been made by respondent-mother and father toward correcting the conditions which lead to removal of the children; however that progress was not nearly enough. The issues that led to the children being removed from the home were substance abuse by the parents, inadequate housing, employment, the children failing to attend school regularly, the parent's failure to maintain D.K.'s prescription for medication associated with his ADHD and the parent's failure to provide counseling for T.K. Thereafter, the three older children were in and out of placement for 18 months. After careful consideration, the court had no assurances respondent-mother had made sufficient progress for the children to be returned to her care. This assignment of error is overruled.

II

[2] In her second assignment of error, the respondent-mother contends the trial court erred in ceasing reunification efforts with the three older children when the primary focus was how well the children were doing rather than the progress of the parents.

Pursuant to N.C.G.S. § 7B-907(a), in determining whether it is possible for the children to return home within six months of the permanency planning hearing, the court must look at the progress the parents have made in eliminating the conditions that lead to the removal of the children. N.C. Gen. Stat. § 7B-907(a) (2003). Further, if the court determines it is not possible for the juvenile to return home within that time, the court must then make findings as to why it is not in the juvenile's best interest to return home. *Id.*

"In determining the best interests of the child, the trial court should consider the parents' right to maintain their family unit, but if the interest of the parent conflicts with the welfare of the child, the latter should prevail." *In re Parker*, 90 N.C. App. 423, 431, 368 S.E.2d 879, 884 (1988). Thus, in this context, the child's best interests are paramount, not the rights of the parent. *In re Smith*, 56 N.C. App. 142, 150, 287 S.E.2d 440, 445, *cert. denied*, 306 N.C. 385, 294 S.E.2d 212 (1982). In this case, the court determined that it was not in the three older children's best interest to return home before determining whether it was possible for them to return home. The court made the following findings of fact:

7. That in July 2002, the juveniles, [T.K., D.K., and T.K.] were placed with [C.C.], the maternal aunt, and all three have remained there since that time. The children have made great progress while in her home. [D.K.] has significant needs which are being addressed in therapy. Based on the history of the home at the time the children came into custody, the two older children are very vocal about not returning to the home of the mother and the stepfather.

8. That the children have thrived in the home of [C.C.] and the two older children have no interest in visiting with the mother though visitation has been offered. [D.K.] has expressed a desire to kill [her stepfather].

9. That the therapist reports [the youngest daughter, T.K.] recognizes [C.C.'s] home as her family home . . . .

10. That the children have resided with each other and look to each other for support and stability. It is, therefore, not in the best interest of the three older juveniles to separate one from the other.

11. That DSS has made reasonable efforts to implement a permanent plan for the juveniles. The permanent plan for [T.K.,

D.K. and T.K.] is guardianship with [C.C.]. The permanent plan for [J.K.] currently is reunification with either the mother or the father or both.

12. That the reports to the [c]ourt clearly indicate that it is not in [T.K., D.K., and T.K.'s] best interest to transition into the home of their mother.

13. That the [c]ourt specifically finds that efforts to reunite would be futile and inconsistent with the juveniles, [T.K., D.K., and T.K.'s] health, safety, and need for a permanent home within a reasonable period of time.

. . .

15. That it is not possible for [T.K., D.K., and T.K.] to be returned home immediately or within six months and the [c]ourt finds it is not in the best interest of these three juveniles to be returned home in light of the issues yet to be resolved.

16. That because the children's return home is not likely within six months, the [c]ourt has considered whether legal guardianship should be established. [T.K., D.K., and T.K.] have been placed with [C.C.] . . . for over a year. She has met the needs of the juveniles and provides a permanent safe environment.

. . .

24. That at this time, the juveniles' continuation in or return to their home is contrary to their best interest.

25. That guardianship in this [c]ourt's opinion is better because the children need to deal with the hurt and the anger they feel toward their parents, in particular [the oldest daughter, T.K. and D.K.].

The court then made the following conclusions of law:

2. [DSS] has made reasonable efforts since the last hearing to prevent or eliminate the need for foster care placement.

3. Continuation of the juveniles in or return to their home will be contrary to their best interest, health, safety and welfare.

4. Reasonable efforts to reunite [T.K., D.K., and T.K.] should be suspended as the permanent plan is guardianship with [C.C.].

**IN RE T.K., D.K., T.K. & J.K.**

[171 N.C. App. 35 (2005)]

Reasonable efforts to reunite [J.K.] should not be suspended at this time.

. . .

6. It is in the best interest of [T.K., D.K., and T.K.] to be placed under guardianship with [C.C.].

7. It is in the best interest of [J.K.] to remain in the legal custody of the [DSS] with placement in foster care.

8. The [c]ourt further concludes that termination of parental rights is not in the best interest of [T.K., D.K., and T.K.] as the permanent plan is guardianship with a relative.

Respondent-mother argues the court ceased reunification by disregarding the progress of the parents and focusing solely on the three older children's best interests. This argument is without merit. As noted above, the court made specific findings and conclusions of law based on the parents' progress. The court found that respondent-mother had addressed her drug addiction and changed her lifestyle, noting that while she had tested negative for drugs seven times, she had tested positive four months prior. The court also noted the father of the two oldest children had made greater progress than the respondent-mother in making lifestyle improvements, finding it was more likely the father would regain custody of the youngest child than the mother. Here the court properly made findings of fact as to the respondent-mother's progress (or lack thereof) and as to the best interest of the children. However, as we stated above, at this stage the best interests of the children, not the rights of the parents, are paramount. *In re Smith* at 150, 287 S.E.2d at 445; *See also, In re Isenhour*, 101 N.C. App. 550, 553, 400 S.E.2d 71, 73 (1991) (trial court did not abuse its discretion in maintaining custody arrangements before it, given the mother's relatively recent compliance with the trial court's orders and the children's stated desires to remain in their current placement). This assignment of error is overruled.

AFFIRMED

Judge LEVINSON concurs.

Judge TYSON concurs in part and dissents in part.

TYSON, Judge concurring in part, dissenting in part.

I concur in that portion of the majority's opinion to affirm the trial court's order to continue reunification efforts for J.K. I disagree with the holding in the majority's opinion to affirm the trial court's permanency plan of guardianship for T.K., D.K., and T.K. I also disagree with the majority's holding to affirm the trial court's order because it failed to state the required clear, cogent, and convincing standard of proof and the trial court unlawfully delegated its judicial authority to determine respondent's visitation with her children to a therapist. I respectfully dissent.

## I. Parental Rights

If the trial court determines the children are not to return home at the conclusion of the permanency planning hearing, the trial court must consider the following enumerated factors and make written findings of fact. Pursuant to N.C. Gen. Stat. § 7B-907(b) (2003), "(2) Where the juvenile's return home is unlikely within six months, whether legal guardianship or custody with a relative or some other suitable person should be established, and if so, the rights and responsibilities which should remain with the parents."

The trial court determined continued reunification efforts were futile and that guardianship of T.K., D.K., and T.K. should be placed with C.C. with no visitation rights for respondent. The "rights and responsibilities" of the minor "should remain with the parent." *Id.* By ordering no visitation rights for respondent and guardianship to C.C., the trial court effectively terminated respondent's parental rights in violation of the statute. *Id.*

## II. Permanency Planning Hearing

Pursuant to N.C. Gen. Stat. § 7B-907(a) (2003), "The purpose of [a] permanency planning hearing shall be to develop a plan to achieve a safe, permanent home for the juvenile within a reasonable period of time." The issue before us is whether the trial court erred in terminating respondent's reunification plan within two months, where she showed achievement of some goals and substantial progress toward others.

N.C. Gen. Stat. § 7B-907(a) (2003) states that "[i]n any case where custody is removed from a parent, guardian, custodian, or caretaker, the judge shall conduct a review hearing designated as a permanency planing hearing within 12 months after the date of the initial order

**IN RE T.K., D.K., T.K. & J.K.**

[171 N.C. App. 35 (2005)]

removing custody . . . ." The purpose of this hearing is to find a safe, permanent home for the juvenile within a reasonable period of time. *Id.*

On 7 May 2002, DSS filed juvenile petitions for T.K., D.K., and T.K. On 17 July 2002, the juveniles were determined to be neglected and dependent. At a dispositional hearing on 22 August 2002, the court approved a plan for reunification. After considering DSS's summary report at a review hearing on 29 October 2002, the trial court reversed its decision for reunification and changed the plan to termination of parental rights and adoption. Only two months had elapsed between the court's adoption of a plan for reunification and its termination of that plan.

On 22 August 2002, a dispositional hearing addressed the problems which lead to the removal of the children. The order from that hearing identified these problems as: drug abuse, lack of employment, housing, and parenting. The majority's opinion details respondent's substantial progress toward each goal. Two months are simply not enough time for respondent to fully remedy these issues, or to entirely eliminate the causes that led to the removal of her children. In the review hearing order, the trial court found respondent had complied with some of the care plan goals and made substantial progress toward meeting others. Yet, the court ruled her compliance insufficient to merit continued reunification. The time period that the trial court allotted respondent to fully address and resolve the issues was unreasonable. The trial court erred in reversing the plan for reunification in light of the substantial progress respondent had shown during the short two month period.

### III. Clear, Cogent, and Convincing Evidence

Our review of respondent's assignments of error is well-established. We must determine: (1) "whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence;" and (2) "whether the findings of fact support the conclusions of law" in the order. *In re Huff,* 140 N.C. App. 288, 291, 536 S.E.2d 838, 840 (2000) (quotations and citation omitted), *disc. ·rev. denied and appeal dismissed,* 353 N.C. 374, 547 S.E.2d 9 (2001). We review the trial court's conclusions of law *de novo. Scott v. Scott,* 157 N.C. App. 382, 385, 579 S.E.2d 431, 433 (2003); *see also Browning v. Helff,* 136 N.C. App. 420, 423, 524 S.E.2d 95, 97-98 (2000). In *In re Church,* we remanded to "the trial court to determine whether the evidence satisfies the required standard of proof of clear and convincing evidence."

136 N.C. App. 654, 658, 525 S.E.2d 478, 481 (2000). That same result is required here.

Here, the trial court reversed its decision for reunification without making any required findings of fact based upon clear, cogent, and convincing evidence. When the trial court's findings of fact are not based on clear, cogent, and convincing evidence, the conclusions that are based on those facts are unsupported. *In re Oghenekevebe*, 123 N.C. App. 434, 439, 473 S.E.2d 393, 398 (1996). The trial court erred in not articulating its standard of review. We may not infer it. *In re Church*, 136 N.C. App. at 658, 525 S.E.2d at 480.

### IV.  Unfitness as a Parent

The trial court's order granted guardianship to C.C. and did not permit respondent any visitation, supervised or unsupervised, with T.K., D.K., and T.K. In *Moore v. Moore*, this Court reiterated the importance of " 'the constitutionally-protected paramount right of parents to custody, care, and control of their children must prevail.' " 160 N.C. App. 569, 572-73, 587 S.E.2d 74, 76 (2004) (quoting *Petersen v. Rogers*, 337 N.C. 397, 403-04, 445 S.E.2d 901, 905 (1994)). In reversing the trial court's order denying the plaintiff-father any and all visitation rights, we held that "without proof of inconsistent conduct, the 'best interest' test does not apply and the trial court is limited to finding that the natural parent is unfit to prohibit all visitation or contact with his or her child." *Moore*, 160 N.C. App. at 573, 587 S.E.2d at 76; *see* N.C. Gen. Stat. § 50-13.5(i) (2003).

The trial court's order fails to make a finding that either: (1) respondent's conduct was inconsistent with her protected status as a parent, thus triggering the "best interests of the child" standard; or (2) respondent has shown by clear and convincing evidence to be unfit as a parent. *Moore*, 160 N.C. App. at 573, 587 S.E.2d at 76; N.C. Gen. Stat. § 50-13.5(i). The trial court erred by denying respondent all visitation rights with T.K., D.K., and T.K. without finding her to be unfit or engaging in conduct inconsistent with her parental rights. *Id.* Absent proper findings supported by clear, cogent, and convincing evidence, the trial court's conclusions of law are erroneous, and should be reversed.

### V.  Delegation of Authority

The trial court wrongfully delegated its judicial authority to T.K.'s therapist to determine what is in her "best interest" and whether the respondent should have visitation. The trial court ordered if the ther-

apist concluded respondent's visitation with her children was "best," the court would summarily authorize the visits.

> "The rendering of a judgment is a judicial act, to be done by the court only," Hall, J., in *Mathews v. Moore*, 6 N.C. 181 [(1812)]. "Judgments are the solemn determinations of judges upon subjects submitted to them," Hall, J., in *Williams v. Woodhouse*, 14 N.C. 257 [(1831)]. "A judgment is not what may be entered, but it is what is considered and delivered by the court," Reade, J., in *Davis v. Shaver*, 61 N.C. 18 [(1866)]. "In its ordinary acceptation, a judgment is the conclusion of the law upon facts admitted or in some way established, and, without this essential fact, the court is not in a position to make final decision on the rights of the parties," *Sedbury v. Express Co.*, 164 N.C. 363, 79 S.E. 288 [(1913)].

*Eborn v. Ellis*, 225 N.C. 386, 389, 35 S.E.2d 238, 240 (1945).

This Court held

> wherein the court considered former N.C. Gen. Stat. § 7A-573, which explicitly permitted delegation of the court's power by administrative order, N.C. Gen. Stat. § 7B-2506 does not state, or even indicate, that the court may delegate its discretion. The statute does not contemplate the court vesting its discretion in another person or entity, therefore, the court, and the court alone, must determine which dispositional alternatives to utilize . . . juvenile. Accordingly, we hold the trial court improperly delegated its authority . . . .

*In re Hartsock*, 158 N.C. App. 287, 292, 580 S.E.2d 398, 399 (2003).

Upon close review, the General Assembly does not authorize a trial judge to delegate her authority and decision-making power for another to determine whether a parent may visit with her child. N.C. Gen. Stat. § 7B-2506 (2003). The trial court erred in delegating the decision whether respondent may visit with T.K. to the therapist.

## VI. Conclusion

I concur in the majority's opinion to affirm the trial court's order to continue reunification efforts for J.K. I disagree with the holding in the majority's opinion to affirm the trial court's permanency plan of guardianship for T.K., D.K., and T.K. The majority's assertion "the child's best interests are paramount, not the rights of the parent" is an incorrect statement of the law. *Petersen*, 337 N.C. at 403-04, 445 S.E.2d at 905 ("We hold that absent a finding that parents (i) are unfit

or (ii) have neglected the welfare of their children, the constitution-ally-protected paramount right of parents to custody, care, and con-trol of their children must prevail.") A "best interest" analysis is not reached unless the trial court finds by clear, cogent, and convincing evidence that the parents are either "unfit or have engaged in conduct inconsistent with their parental rights." *Id.* at 403-04, 445 S.E.2d at 905; *see* N.C. Gen. Stat. § 50-13.5(i). That portion of the trial court's order ceasing reunification efforts should be reversed.

The trial court must make findings of fact based on clear, cogent, and convincing evidence, *In re Huff*, 140 N.C. App. at 291, 536 S.E.2d at 840, and judicially determine respondent's visitation with her chil-dren, *In re Hartsock*, 158 N.C. App. at 292, 580 S.E.2d at 394. The trial court's order is affected with an error of law and should be reversed. I respectfully dissent.