IN THE MATTER OF: K.L.C. and K.R.N.
No. COA08-189
Court of Appeals of North Carolina
Filed July 15, 2008
This case not for publication
Elva L. Jess for petitioner-appellee Brunswick County Department of Social Services, and Paula H. Green for the Guardian Ad Litem Program.
Terry F. Rose for respondent-appellant.
ELMORE, Judge.
Respondent-mother appeals from orders terminating her parental rights to her daughter, K.L.C., and her son, K.R.N. For the following reasons, we affirm.
The Departments of Social Services of New Hanover County and Brunswick County have removed respondent-mother's children from her home at least three times. The Brunswick County Department of Social Services (DSS) first became involved with respondent-mother in February of 2004 when the children were removed from the home based upon substantiated reports of abuse and neglect by respondent-mother. The children were adjudicated neglected in April of 2004 and subsequently returned to respondent-mother's care. In September 2005, DSS filed juvenile petitions alleging that K.L.C. and K.R.N. were neglected. The juvenile petitions alleged that the mother had not enrolled her children in school for the 2005 school year; that they were currently living at a motel located in a drug and crime infested area; that the children had been seen in the area until 1:00 a.m.; and that there was no proper food in the motel room. DSS took non-secure custody of the children. Respondent-mother entered into a Family Services Case Plan on 10 October 2005.
By order filed 21 November 2005, the trial court adjudicated the children neglected. In addition to complying with the requirements of the Family Services Case Plan, the trial court ordered respondent-mother to submit to psychological and psychiatric evaluations and to complete the recommended treatment. The trial court also ordered respondent-mother not to possess or consume any alcoholic beverages or controlled substances unless prescribed by a doctor, to submit to random drug screens, and to provide copies of all prescriptions for medications. Respondent-mother was allowed to exercise reasonable visitation with the children at the discretion of DSS. In its disposition order, the trial court found that respondent-mother had attempted suicide following the adjudication hearing. The trial court found that it was in the best interest of the children to pursue concurrent plans, including reunification, if respondent-mother made reasonable reunification efforts or long term out-of-home placement. Respondent-mother subsequently executed a revised Family Services Case Plan and informed the court that she had "no problem complying with [its] terms and conditions. . . ."
The trial court conducted a permanency planning hearing on 28 September 2006. By order filed 19 October 2006, the trial court found that respondent-mother's visitation had been terminated because of her "inappropriate communications and behaviors with the children during visits. K.[R.N.] requested that his visits stop." The trial court further found that respondent-mother had not made reasonable efforts to comply with the case plan by: (1) not reporting any therapeutic treatment for her psychological problems, although respondent-mother stated that she lacked the funds to pay for therapy and has transportation problems; (2) not maintaining steady employment; (3) testing negative for one drug screen, but not reporting for other random screens as requested; (4) failing to obtain housing with her own income in that she currently has a female roommate with four children; (5) not attending parenting classes; (6) not attending empowerment classes; (7) not submitting a substance abuse assessment; and (8) not having reliable transportation in that she has a driver's license but no vehicle. The trial court found that legal guardianship or custody with a relative should not be pursued and that adoption should be pursued. The trial court further found that the children were "happy in their present placement and report that they get along very well with the other members of the foster family" and "desire to remain in this placement." DSS was relieved of any reunification requirement and ordered to finalize the permanent placement of the juveniles, including the termination of parental rights.
In March of 2007, the trial court entered a permanency planning review order in which it ordered that it was in the best interest of the children for DSS to proceed to terminate parental rights. On 12 March 2007, DSS filed separate petitions to terminate respondent-mother's parental rights as to K.R.N. and K.L.C. based upon neglect (N.C. Gen. Stat. § 7B-1111(a)(1)); willfully leaving the children in foster care without making progress under the circumstances (N.C. Gen. Stat. § 7B-1111(a)(2)); and willfully failing to pay a reasonable portion of the cost for the children (N.C. Gen. Stat. § 7B-1111(a)(3)). The trial court terminated the parental rights of respondent-mother on all three grounds. Respondent-mother appeals.
A termination of parental rights proceeding is conducted in two phases: (1) adjudication and (2) disposition. In re Blackburn, 142 N.C. App. 607, 610, 543 S.E.2d 906, 908 (2001). In the adjudication phase, the petitioner has the burden of proving by clear, cogent, and convincing evidence that one or more of the statutory grounds for termination under N.C. Gen. Stat. § 7B-1111(a) exists. Id. If a petitioner meets its burden of proving one or more statutory grounds for termination, the trial court then moves to the disposition phase, during which it must decide whether termination is in the child's best interest. Id.
Respondent-mother contends that the trial court erred by finding and concluding that sufficient grounds existed to terminate her parental rights. We first note that although the trial court concluded that grounds existed pursuant to sections 7B-1111(a)(1), (2), and (3) of the North Carolina General Statutes to terminate respondent-mother's parental rights, we find it dispositive on appeal that the evidence is sufficient to support termination of respondent-mother's parental rights under section 7B-1111(a)(2). See In re Pierce, 67 N.C. App. 257, 261, 312 S.E.2d 900, 903 (1984) (holding that a finding of one statutory ground is sufficient to support the termination of parental rights).
Under section 7B-1111(a)(2) of the North Carolina General Statutes, a court may terminate parental rights on the ground that "[t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C. Gen. Stat. § 7B-1111(a)(2) (2007). The twelve-month period for the evaluation of reasonable progress under section 7B-1111(a)(2) is not limited to the twelve months immediately preceding the filing of the petition. In re Pierce, 356 N.C. 68, 75, 565 S.E.2d 81, 86 (2002). The willful leaving of the child is "something less than willful abandonment" and "does not require a showing of fault by the parent." In re Oghenekevebe, 123 N.C. App. 434, 439, 473 S.E.2d 393, 398 (1996). A finding of this ground may be made when the parent has made some attempt to regain custody of the child but has failed to show reasonable and positive progress. In re Nolen, 117 N.C. App. 693, 699-700, 453 S.E.2d 220, 224-25 (1995).
As to respondent-mother, the court found that she: (1) did not enroll in either parenting or empowerment classes; (2) did not provide proof of transportation, continuing to rely upon others for transportation; (3) did not secure a substance abuse assessment; (4) did not comply with the random drug screen requirement; (5) reported that she had housing at a mobile home park, but did not provide a copy of the lease agreement or an accurate address; (6) maintained sporadic employment by working at a diner for a few days, for a private investigator, and for a man who laid flooring, but did not provide verification of her wages; and (7) had not initiated individual therapy or followed any recommendations based upon her psychological evaluation.
Although respondent-mother assigns error to these findings, she does not make any argument as to why they are unsupported by competent evidence. These arguments address questions of credibility and the weight of the evidence that may only be decided by the trial court. Consequently, respondent has abandoned her assignments of error on these issues, and they are deemed binding on appeal. See In re P.M., 169 N.C. App. 423, 424, 610 S.E.2d 403, 404-05 (2005) (concluding that the respondent had abandoned factual assignments of error when she "failed to specifically argue in her brief that they were unsupported by evidence"). A review of the record and transcript shows that the trial court's findings are based upon orders entered in the case and testimony from social workers and respondent-mother.
Respondent-mother nevertheless argues that the trial court ignored significant progress and, therefore, erred in concluding that she willfully failed to correct the problems that led to the children being placed in foster care. Although the trial court found that respondent-mother had completed the psychological and psychiatric evaluations, provided signed medical releases and a list of prescribed medications, and maintained her scheduled visits, the trial court identified stable and safe housing as the main reason that the children were placed in the custody of DSS. Respondent-mother's failure to obtain appropriate housing and employment, as ordered by the court and recommended by DSS, supported the court's determination that these accomplishments were not "reasonable progress" in correcting those conditions which led to the removal of the children. See In re Nolen, 117 N.C. App. at 700, 453 S.E.2d at 224-25 (1995) ("Extremely limited progress is not reasonable progress.").
We, therefore, conclude that the trial court had clear, cogent, and convincing evidence to determine that respondent-mother had willfully left K.L.C. and K.R.N. in foster care for more than twelve months without showing to the satisfaction of the court that reasonable progress had been made . We further conclude that these findings of fact support the trial court's conclusion that grounds existed to terminate respondent-mother's parental rights under N.C. Gen. Stat. § 7B-1111(a)(2). Finally, the trial court did not abuse its discretion in concluding that it was in the best interests of K.L.C. and K.R.N. to terminate respondent-mother's parental rights. Once statutory grounds for termination have been established, the trial court must "determine whether terminating the parent's rights is in the juvenile's best interest." N.C. Gen. Stat. § 7B-1110(a) (2007). This Court will not reverse a trial court's decision to terminate parental rights unless we find it to be an abuse of discretion. In re Brim, 139 N.C. App. 733, 745, 535 S.E.2d 367, 374 (2000). "[T]he child's best interests are paramount, not the rights of the parent." In re T.K., 171 N.C. App. 35, 39, 613 S.E.2d 739, 741, aff'd, 360 N.C. 163, 622 S.E.2d 494 (2005).
In the present case, the trial court properly found that respondent-mother willfully left her children in foster care without making reasonable progress in correcting those conditions which led to the removal of the children. Moreover, the evidence at the termination hearing demonstrated that the children were doing well in their foster home. During the disposition portion of the proceedings, guardian ad litem Nancy Seitz testified that K.R.N. is a straight "A" student, that K.R.N. wants stability with a family and the same classmates, and that "[he] feels that this is the first period in his life where he has ever had a chance to do that." Further, K.L.N. is now reading on grade level and is "accomplishing regular math without . . . extra assistance. . . ." Seitz testified that the children have been with the current foster care family for over eight months and that it is a prospective adoptive placement for both of them. When we consider the trial court's findings regarding respondent-mother's lack of progress and the need for stable housing in conjunction with its findings regarding K.R.N.'s request to cease visitation with his mother, the trial court's decision to terminate respondent-mother's parental rights does not appear to be an abuse of discretion. Therefore, this assignment of error is overruled.
Affirmed.
Chief Judge MARTIN and Judge ARROWOOD concur.
Report per Rule 30(e).