IN THE MATTER OF: J.V.
No. COA09-1619.
Court of Appeals of North Carolina.
Filed May 4, 2010.
J. Tyrone Browder, for Stokes County Department of Social Services, petitioner-appellee.
Pamela Newell Williams, for Guardian ad Litem.
Ryan McKaig, for respondent-appellant.

UNPUBLISHED OPINION
JACKSON, Judge.
John V. ("respondent") appeals from the trial court's 16 September 2009 permanency planning order changing the permanent plan for juvenile J.V. to custody and guardianship with relatives. Respondent contends that the trial court's findings of fact do not support its conclusion that custody and guardianship with relatives is in J.V.'s best interest. For the reasons set forth below, we affirm.
Respondent and J.V.'s mother, A.V., had three daughters together  M.V., V.V., and J.V. The Stokes County Department of Social Services ("DSS") has been involved with the family since 1992. In 1993 and 1999, DSS received reports of abuse. On 11 October 2007, DSS received a report that respondent had punched M.V. in the face, causing a nose bleed. Respondent acknowledged that he had physical confrontations with M.V. on 9 and 11 October 2007. As a result of the abuse of her older sisters, J.V. was afraid to live with respondent. On 12 October 2007, the trial court placed J.V. in nonsecure custody with DSS.
On 15 October 2007, DSS filed a petition alleging that J.V. was a neglected and dependent juvenile based upon the 9 and 11 October 2007 incidents. DSS also filed petitions as to the two older children, M.V. and V.V.[1] In its petitions, DSS noted that A.V. was incompetent and unable to protect herself or the juveniles from respondent.
DSS subsequently placed J.V. in the home of her maternal aunt and uncle. On 15 November 2007, the trial court adjudicated J.V. neglected. On 11 February 2008, the court entered a consent disposition order in which it (1) kept J.V. in the aunt and uncle's custody, (2) directed DSS to continue reasonable efforts toward reunification, and (3) set the permanent plan for J.V. as reunification. The trial court ordered respondent to comply with his case plan, which required him to attend parenting classes and learn appropriate discipline techniques, participate in the Parents and Teens Together program, and obtain a domestic violence assessment.
On 24 September 2008, the trial court allowed the aunt and uncle's motion to intervene in the matter. On 25 November 2008, the court entered a permanency planning order in which it changed the permanent plan for J.V. to custody and guardianship with the aunt and uncle. The trial court released DSS from further efforts with respect to juvenile. Respondent appealed from that order.
On 7 July 2009, this Court filed an opinion in which it vacated the permanency planning order and remanded the matter for additional findings of fact and conclusions of law consistent with North Carolina General Statutes, section 7B-907(b). See In re J.V. & M.V., ___ N.C. App. ___, ___, 679 S.E.2d 843, 849 (2009). On 9 and 23 July 2009, the matter came on for further proceedings. On 16 September 2009, the trial court entered a new permanency planning order in which it again changed J.V.'s permanent plan to custody and guardianship with the aunt and uncle. Respondent now appeals from the second permanency planning order.
On appeal, respondent's sole argument is that the trial court's findings of fact do not support its changing J.V.'s permanent plan to custody and guardianship with her aunt and uncle. We disagree.
"The purpose of [a] permanency planning hearing shall be to develop a plan to achieve a safe, permanent home for the juvenile within a reasonable period of time." N.C. Gen. Stat. § 7B-907(a) (2009). "At any permanency planning review, the court shall consider information from the parent, the juvenile, the guardian, any foster parent, relative or preadoptive parent providing care for the child, the custodian or agency with custody, the guardian ad litem, and any other person or agency which will aid it in the court's review." N.C. Gen. Stat. § 7B-907(b) (2009).
"At the conclusion of the hearing, the judge shall make specific findings as to the best plan of care to achieve a safe, permanent home for the juvenile within a reasonable period of time[,]" including the appointment of "a guardian of the person for the juvenile pursuant to [North Carolina General Statutes, section] 7B-600" or "any disposition authorized by [North Carolina General Statutes, section] 7B-903 including the authority to place the child in the custody of either parent or any relative found by the court to be suitable[.]" N.C. Gen. Stat. § 7B-907(c) (2009).
If the juvenile is not returned home, the court shall consider the following criteria and make findings as to those that are relevant:
(1) Whether it is possible for the juvenile to be returned home immediately or within the next six months, and if not, why it is not in the juvenile's best interests to return home;
(2) Where the juvenile's return home is unlikely within six months, whether legal guardianship or custody with a relative or some other suitable person should be established, and if so, the rights and responsibilities which should remain with the parents;
(3) Where the juvenile's return home is unlikely within six months, whether adoption should be pursued and if so, any barriers to the juvenile's adoption;
(4) Where the juvenile's return home is unlikely within six months, whether the juvenile should remain in the current placement or be placed in another permanent living arrangement and why;
(5) Whether the county department of social services has since the initial permanency plan hearing made reasonable efforts to implement the permanent plan for the juvenile;
(6) Any other criteria the court deems necessary.
N.C. Gen. Stat. § 7B-907(b) (2009).
Rather than arguing that the trial court neglected to consider the relevant factors, respondent contends that the trial court's findings of fact do not support its conclusion that changing J.V.'s permanent plan to guardianship and custody with relatives is in her best interest. Respondent's argument primarily is focused on one particular finding of fact:
Respondent . . . has done everything that has been ordered by the Court. He has attended counseling on a regular basis, completed the 90 day TASC program, taken a parenting class through SCAN, maintained housing, maintained a job, paid child support, and has not been in any more trouble since removal of the children. He has gone to AA meetings. He has successfully completed the required community service and made the required court costs of his deferred prosecution. His wife has returned home to live with him and there, as of the September 2008 hearing, have been no problems with her return. Daughter [M.V.] testified that she has seen that he is more positive and more religious; she is not afraid of her father and believes, as she noted in her testimony [in] September 2008, that unsupervised visits with her father would be all right.
Although respondent correctly notes that the trial court acknowledged his progress in this finding, the trial court also made numerous unchallenged findings of fact that support its conclusion that returning to respondent's home is not in J.V.'s best interest:
14. [V.V.] was previously assaulted by [respondent], and she was verbally and emotionally abused by [him]. She also witnessed [respondent]'s assaults on her mother.
15. [M.V.] is the victim of [respondent]'s assaults . . . . At the September 2008 court date, she was attending counseling[.]
16. [Respondent] was criminally charged for assaulting [M.V.] The charges were resolved by his entering into a Deferred Prosecution Agreement.
17. [J.V.] was interviewed, at the September 2008 hearing, in chambers with the consent of all parties. She witnessed [respondent] assault her sister on numerous occasions. [Respondent] yelled at the girls and verbally abused them. Their mother, [A.V.], was unable to protect them from [respondent]. . . .
. . . .
30. As of the September 2008 court date, [J.V.]'s mother was unable to protect her and make sure she was safe. Neither sister was residing in the home at the time of the September 2008 hearing. At the time of the July 2009 hearing, the mother still cannot protect [J.V.] and neither sister, presently, resides in the home with the parents.
31. [J.V.] stated she had to watch [respondent] "beat my sisters and mom, and there was nothing I could do about it." When [respondent] was beating her sisters, [J.V.] said she tried to stop him by hitting him, but it didn't make a difference.
. . . .
33. [J.V.], when living in the home with her parents, was awakened in the night, on numerous occasions, by yelling, cussing, and screaming coming from her parents' room. Specifically, she heard her mother yelling, ["]I don't want to do it.["]
. . . .
35. On February 21, 2009, the day after [a social worker] had made a home visit to [respondent's] residence, she received a telephone call from [respondent]. He told her he liked her voice, that he was shy, and that he had written her a poem. He stated he liked her, also asking her if she liked to dance and if she went on dates with her husband. . . .
36. [Respondent] told his daughter [M.V.], the day before [the social worker's] testimony about the telephone conversation set out in finding #34, that [M.V.] would hear he had "phone sex" with [the social worker]. He did not deny its occurrence to [M.V.] but warned her of what she should prepare to hear in court. . . .
. . . .
40. [J.V.] is fourteen years old, as of the July 2009 hearing date, and she is a freshman in high school pursuing the early college program. She makes all A's and B's.
41. [J.V.] has been placed with [her aunt and uncle] since October 2007, one and one half years. Initially, [respondent] agreed to [J.V.] living there, when the DSS first became involved.
. . . .
43. [J.V.] notes she does not want increased visits with [respondent] but does want increased visits with her mother, held separately from those with [respondent].
44. [J.V.] says she is uncomfortable with [respondent], that he "freaks her out." He has kissed her on the neck a few times and this makes her feel uncomfortable. She notes [respondent] looks at her "like a younger guy checking her out." She calls him a pedophile.
. . . .
47. [The aunt and uncle] have encouraged [J.V.] to visit her parents and maintain a relationship with [her parents].
48. [J.V.]'s fear of [respondent] is real and based upon what she has witnessed [respondent] do to her sisters and mother.
. . . .
50. [The aunt] reports [respondent] makes repeated calls to their home, not stopping until [J.V.] speaks to either him or [A.V.]
. . . .
60. [A.V.] remains unable to protect her children. In fact, she has her own guardian.
61. [Respondent], despite his completing his court-ordered case plan, continues to conduct himself in an inappropriate manner.
Respondent has not challenged any of the above findings of fact on appeal, and, therefore, they are binding on this Court. See, e.g., In re S.D.J., 192 N.C. App. 478, 486, 665 S.E.2d 818, 824 (2008) (citing Koufman v. Koufman, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991)).
We hold that the trial court's findings of fact demonstrate that it properly considered respondent's progress in relation to the threat he still posed to J.V. See In re T.K., D.K., T.K. & J.K., 171 N.C. App. 35, 613 S.E.2d 739 (affirming trial court's order when trial court was not convinced that the respondent had made sufficient progress), aff'd, 360 N.C. 163, 622 S.E.2d 494 (2005) (per curiam). In the finding cited by respondent, the trial court acknowledged that respondent had made progress in his case plan. Nonetheless, the bulk of the trial court's findings demonstrate that respondent continued to have boundary issues with women, including a social worker acting as a guardian for A.V. Those findings demonstrate that the trial court considered all of the evidence, and upon those findings, the court reasonably concluded that returning J.V. to live with respondent would not be in her best interest because of, inter alia, respondent's continuing pattern of inappropriate behavior.
Further, the trial court's findings of fact and conclusions of law reflect that it considered the relevant statutory factors. The trial court found that J.V., due to her fear of respondent after observing his abuse of her mother and sisters, could not be returned home immediately or within the next six months and that it was not in her best interest to return home. The trial court concluded that legal custody should remain with the aunt and uncle and that adoption should not be pursued because J.V. was doing well in a relative placement. The trial court also concluded that DSS had made reasonable efforts to reunite the family. These findings of fact and conclusions of law demonstrate the trial court's compliance with North Carolina General Statutes, section 7B-907(b).
Accordingly, we hold that the trial court properly considered the relevant factors set forth by North Carolina General Statutes, section 7B-907(b) in its permanency planning order and that its findings of fact support its conclusions of law, which, in turn, support its order. Therefore, we affirm the order of the trial court.
Affirmed.
Chief Judge MARTIN and Judge Stroud concur.
Report per Rule 30(e).
NOTES
[1] Both M.V. and V.V. have reached the age of eighteen years old prior to the conclusion of the case, and they are not subjects of the order appealed by respondent.