IN THE MATTER OF: J.V. AND M.V.

No. COA09-213

(Filed 7 July 2009)

**1. Child Abuse and Neglect— jurisdiction on appeal—challenge to permanency planning order—modification of custody**

The Court of Appeals had jurisdiction to consider a father's challenge to a permanency planning order where the trial court modified custody from DSS to an aunt and uncle.

**IN RE J.V. & M.V.**

[198 N.C. App. 108 (2009)]

## 2. Child Abuse and Neglect— permanency planning order— return to home—no findings

The findings in a permanency planning order did not address the issues required by N.C.G.S. § 7B-907(b), and the order was remanded, where it could not be discerned from the findings whether the trial court believed the child could be returned home at some point and, if so, the circumstances under which that might be possible. The use of guardianship does not eliminate the need to address the issue because guardianship can be terminated.

Appeal by respondent from order entered 25 November 2008 by Judge Charles M. Neaves in Stokes County District Court. Heard in the Court of Appeals 8 June 2008.

*J. Tyrone Browder for petitioner-appellee Stokes County Department of Social Services.*

*Pamela Newell Williams Attorney for Guardian Ad Litem, appellee.*

*Ryan McKaig for respondent-appellant.*

ERVIN, Judge.

John V. (Respondent Father) appeals from a permanency planning review order entered by the trial court on 8 June 2008 which, *inter alia,* awarded custody and guardianship of his daughter, J.V.[1] to Donna and James Allen S., her maternal aunt and uncle (Donna and James).[2] For the reasons set forth below, we vacate the trial court's order and remand this proceeding to the trial court for additional findings of fact.

---

1. In order to protect the privacy of the juvenile and for ease of reading, the juvenile who is the subject of this appeal will be referred to throughout the remainder of this opinion as Joy.

2. Donna and James sought leave to intervene in this proceeding on 11 August 2008, a request that was allowed by the court.

IN RE J.V. & M.V.

[198 N.C. App. 108 (2009)]

Respondent Father and his wife, Anita V. (Mother), are the parents of three daughters, V.V.[3], M.V.[4], and Joy. On 15 October 2007, the Stokes County Department of Social Services (SCDSS) filed juvenile petitions alleging that Marilyn was an abused, neglected and dependent juvenile and that Joy was a neglected and dependent juvenile. According to the allegations set out in the petition, Joy was afraid of Respondent Father because he physically abused Veronica and Marilyn; Respondent Father punched Marilyn in the nose on 11 October 2007, causing a nosebleed; Respondent Father confirmed the physical altercation; and domestic violence had occurred between Respondent Father and Mother.

At the time of the filing of the petition, the SCDSS took nonsecure custody of all three children. Mother, who entered into a consent agreement concerning her adjudication of incompetence, voluntarily placed herself outside the home with Adult Protective Services.[5] The trial court allowed Respondent Father to have supervised visitation with Marilyn and Joy. Respondent Father also entered into a case plan with the SCDSS in which he agreed to take parenting classes, learn alternative means of discipline, and attend domestic violence counseling.

The court subsequently adjudicated Marilyn and Joy to be neglected juveniles based upon a stipulation by the parties. The trial court placed Marilyn and Joy with Donna and James and ordered Respondent Father to cooperate with the SCDSS to effect reunification of Marilyn and Joy with Respondent Father and Mother.

At a review hearing held on 14 February 2008, the court concluded that immediate return of the juveniles to their home would be contrary to their health, safety and best interests and that the permanent plan for Marilyn and Joy would be reunification with their parents, with an alternative plan of "custody to a relative or court approved other." The court ordered that custody of the juveniles be with the SCDSS and that the juveniles be placed with Donna and

3. In order to protect the juvenile's privacy and for ease of reading, V.V. will be referred to as Veronica throughout the remainder of this opinion. Although Veronica has turned 18 years old and is no longer subject to the jurisdiction of the juvenile court, we will still use a pseudonym for her given that she was a subject of the proceedings in the court below at an earlier time.

4. For the same reasons that pseudonyms have been adopted for V.V. and J.V., M.V. will be referred to as Marilyn throughout the remainder of this opinion.

5. However, she was living at home with Respondent Father as of the date of the permanency planning hearing.

James. Although Joy continued to reside with Donna and James throughout the proceedings in this case, Marilyn was subsequently transferred to a foster home.

On 24 September 2008, the trial court conducted a permanency planning review hearing. In the 25 November 2008 permanency planning order entered following a hearing held on 30 September 2008, the trial court ordered that reunification with the parents would be the permanent plan for Marilyn and that guardianship with Donna and James would be the permanent plan for Joy. As a result, custody and guardianship of Joy was awarded to Donna and James. The trial court provided for supervised visitation between Respondent Father and both Marilyn and Joy and released the SCDSS and the guardian *ad litem* for Joy but not Marilyn. The trial court concluded that this plan was in the best interests of the children. Respondent Father noted an appeal to this Court from the permanency planning order.

[1] We first note that, by making Donna and James the guardians for Joy, the trial court modified her custody from the SCDSS to Donna and James, which allows Respondent Father to appeal the permanency planning order as to Joy pursuant to N.C. Gen. Stat. § 7B-1001(a)(4) (which renders "[a]ny order, other than a nonsecure custody order, that changes legal custody of a juvenile" immediately appealable). As a result, this Court has jurisdiction to consider Respondent Father's challenge to the permanency planning order on the merits.

[2] "The purpose of [a] permanency planning hearing shall be to develop a plan to achieve a safe, permanent home for the juvenile within a reasonable period of time." N.C. Gen. Stat. § 7B-907(a). "At any permanency planning review, the court shall consider information from the parent, the juvenile, the guardian, any foster parent, relative or preadoptive parent providing care for the child, the custodian or agency with custody, the guardian ad litem, and any other person or agency which will aid it in the court's review." N.C. Gen. Stat. § 7B-907(b). "The court may consider any evidence, including hearsay evidence as defined in G.S. 8C-1, Rule 801, that the court finds to be relevant, reliable, and necessary to determine the needs of the juvenile and the most appropriate disposition." N.C. Gen. Stat. § 7B-907(b). "At the conclusion of the hearing, the judge shall make specific findings as to the best plan of care to achieve a safe, permanent home for the juvenile within a reasonable period of time," including the appointment of "a guardian of the person for the juve-

nile pursuant to [N.C. Gen. Stat. §] 7B-600" or "any disposition authorized by [N.C. Gen. Stat. §] 7B-903 including the authority to place the child in the custody of either parent or any relative found by the court to be suitable . . . ." N.C. Gen. Stat. § 7B-907(c). "If the juvenile is not returned home, the court shall enter an order consistent with its findings . . . ." N.C. Gen. Stat. § 7B-907(c). "[T]he court shall consider the following criteria and make written findings regarding those that are relevant" if "the juvenile is not returned home":

(1) Whether it is possible for the juvenile to be returned home immediately or within the next six months, and if not, why it is not in the juvenile's best interests to return home;

(2) Where the juvenile's return home is unlikely within six months, whether legal guardianship or custody with a relative or some other suitable person should be established, and if so, the rights and responsibilities which should remain with the parents;

(3) Where the juvenile's return home is unlikely within six months, whether adoption should be pursued and if so, any barriers to the juvenile's adoption;

(4) Where the juvenile's return home is unlikely within six months, whether the juvenile should remain in the current placement or be placed in another permanent living arrangement and why;

(5) Whether the county department of social services has since the initial permanency plan hearing made reasonable efforts to implement the permanent plan for the juvenile.

(6) Any other criteria the court deems necessary.

N.C. Gen. Stat. § 7B-907(b). "[I]n determining whether it is possible for the children to return home within six months of the permanency planning hearing, the court must look at the progress the parents have made in eliminating the conditions that [led] to the removal of the children." *In re T.K.*, 171 N.C. App. 35, 39, 613 S.E.2d 739, 741 (2005), *aff'd*, 360 N.C. 163, 622 S.E.2d 494 (2005). "Appellate review of a permanency planning order is limited to whether there is competent evidence in the record to support the findings and [whether] the findings support the conclusions of law." *In re J.C.S.*, 164 N.C. App. 96, 106, 595 S.E.2d 155, 161 (2004).

In the permanency planning order, the trial court found as a fact that:

6. [Joy] is currently thirteen years old and is placed with her aunt and uncle, [Donna and James]. She attends middle school in Rockingham County, where she is doing well.

7. The juveniles have been in out-of-home placement for 11 months.

8. Prior to today's date, the permanent plan was reunification with parents or a parent. The alternate plan is custody to a relative or court-approved other.

9. A DSS Court Summary and a GAL Court Report were received into evidence and are incorporated by reference as additional findings of fact. The following items were also received into evidence and are incorporated by reference: [Joy's] letter, Dr. John Holt['s] letter, Dr. Thomas Holm's Child Family Evaluation and recommendations dated February 11, 2008, Intervenors' court report dated September 30, 2008, [Donna's] criminal record, [Mother's] consent competency order, 07 SP 249, and [Respondent Father's] Parenting Report with attachments, dated September 30, 2008.

10. The [SCDSS] has made reasonable efforts to prevent and/or eliminate the need for the juveniles' placement. These efforts include the following: foster care services, foster care legal, transportation, Medicaid, contact with schools, LINKS, coordination with caregivers, visits with parents and children, contact with [Veronica's] school and assistance with college applications, gas vouchers for [Veronica's] trips to school, kinship care assessments and relative placements, child support referrals, adult Guardianship of the mother, supervised visits between the father and [the] juveniles, referral to Community Support Services, Dr. Holm, WISH, Insight, coordination with appropriate agencies, Dr. Kroiss, coordination with medical services for [the] juveniles. In addition, the facts of the case indicate the [SCDSS] has made reasonable efforts.

11. [Marilyn] and [Joy]'s return to their own home would be contrary to their health, safety, welfare, and best interests.

12. [Veronica] was previously assaulted by [Respondent Father], and she was verbally and emotionally abused by [Respondent Father]. She also witnessed her father's assaults on her mother.

IN RE J.V. & M.V.

[198 N.C. App. 108 (2009)]

13. [Marilyn is] the victim of her father's assaults, although she currently says she is not afraid of him. She believes he is more positive and religious. [Marilyn] does not object to unsupervised visits with her father. She is attending counseling through Triumph.

14. [Respondent Father] was criminally charged for assaulting [Marilyn]. The charges were resolved by his entering into a Deferred Prosecution Agreement.

15. [Joy] was interviewed in chambers with the consent of all parties. She witnessed her father assault her sister on numerous occasions. Her father yelled at the girls and verbally abused them. [Mother] was unable to protect them from their father. [Joy] does not want to visit her father, unless visits are supervised by one of her sisters or her guardian.

16. [Joy] is involved in church and has a goal of attending the North Carolina School of Science and Mathematics. She has an interest in becoming a social worker or a lawyer.

17. [Respondent Father] has completed the following: the TASC Program and parenting classes. He, in addition, attends AA once per week, pays regular child support, and has been in individual counseling for anger management and domestic violence. He is completing the terms of his Deferred Prosecution Agreement resulting from the assault on [Marilyn].

. . . .

20. In the report dated February 11, 2008, by Dr. Thomas Holm, the doctor stated, "despite the mistreatment they (the children) had witnessed and experienced, (which included frequent criticism by their father, intense marital conflict between the parents, excessive punishment and frequent disregard for the children's need for emotional support from the parents,) [Veronica], [Marilyn] and [Joy] appear to be, to a large extent, well-adjusted and capable young women. I was unable to identify evidence of serious emotional damage that would include severe anxiety, depression, withdrawal, and/or aggressive behavior toward self or others. All three children are competent, successful in the classroom, and able to sustain an even emotional adjustment. . . . Somewhat surprisingly, they have arrived at their foster home placement with relatives in sound psychological condition at this time."

21. There was no evidence that any type of corporal punishment [was] used against the youngest child [Joy] other than a spanking several years earlier.

22. [Donna], one of the Intervenors, failed to appear in court after having been subpoenaed by [Respondent Father]. [Donna's] criminal record includes a conviction in Rockingham County Superior Court of Felony Forgery of an instrument wherein [Respondent Father] was the Complainant . . . . [Respondent Father] was unable to examine this Intervenor during the hearing because she did not appear.

23. Counseling for all three children had been ordered in February of 2008, and no counseling took place until very late in the summer. . . . [Marilyn] and [Joy] did not go to court ordered counseling until very late in the summer, and have attended very few sessions. There have been no attempts at family counseling.

24. No convictions of any kind were presented concerning [Respondent Father], although a deferred prosecution agreement resulted from the criminal charges filed concerning the incident that resulted from the removal of the children.

. . . .

26. [Respondent Father] has done everything that has been ordered by the court. He has attended counseling on a regular basis, completed the 90 day TASC program, took a parenting class thru the SCAN organization, has maintained housing, maintained a job, has paid his child support, and has not been in any more trouble since the removal of the children. He has gone to AA meetings. He has successfully completed the required community service and made the required court costs of his deferred prosecution. His wife was returned home to live with him and there have been no problems with her return. [Marilyn] testified that she has seen that he is more positive and more religious, she is not afraid of her father and believes unsupervised visits with her father would be all right.

Based on these findings of fact, the trial court concluded as a matter of law that:

2. It is in [Joy's] best interests for her permanent plan to be custody and guardianship with [Donna and James].

. . . .

IN RE J.V. & M.V.

[198 N.C. App. 108 (2009)]

6. There has been a substantial change of circumstances since the entry of the last order in the matter of [Joy] and it is in the best interests of [Joy] that custody and guardianship be awarded to [Donna and James]. Visitation with her parents shall be arranged during the day and supervised by an appropriate adult.

7. [Veronica] is emancipated. [Marilyn] and [Joy] are doing well in their current placements, the [SCDSS] has made reasonable efforts to reunite the family.

8. [Respondent Father] has complied with his case plan but it is still not safe to return custody of [Marilyn] and [Joy] to the father. . . .

As a result, the trial court ordered that:

1. Pending further hearings, [Marilyn] shall remain in the custody of the [SCDSS] with placement . . . in a licensed foster home. [Joy] shall be placed in the custody and guardianship of [Donna and James].

. . . .

7. Visitation between [Marilyn], [Joy] and their parents shall be during the daytime and supervised by an appropriate adult; however, [Respondent Father] has completed his case plan and efforts shall be made to establish a relationship with [Marilyn] and [Joy]. Because of their maturity and because they are both doing well in their placements, [Marilyn's] and [Joy's] desires for visitation shall be given consideration. . . .

8. The [SCDSS] and the GAL are released in the matter of [Joy].

9. A review and a permanency planning hearing shall be held in six (6) months or earlier upon motion of either party.

Respondent does not argue in his brief that the trial court's findings of fact are unsupported by the evidence. Consequently, these findings of fact are binding for purposes of appellate review. *See In re P.M.*, 169 N.C. App. 423, 424, 610 S.E.2d 403, 404-05 (2005) (concluding respondent had abandoned assignments of error directed to certain findings of fact when she "failed to specifically argue in her brief that they were unsupported by evidence"). Thus, the issues raised by Respondent Father must be evaluated based on the facts found by the trial court.

Respondent Father does, however, assert that Finding of Fact No. 11 has been mischaracterized as a finding of fact and is actually a

conclusion of law. As we have already noted, Finding of Fact No. 11 provides that "[Marilyn's] and [Joy's] return to their own home would be contrary to their health, safety, welfare, and best interests." After careful consideration, we agree with Respondent Father that Finding of Fact No. 11 is a determination which requires an exercise of judgment and is more properly classified a conclusion of law than as a finding of fact. *See In re Helms*, 127 N.C. App. 505, 511, 491 S.E.2d 672, 676 (1997) ("best interest determinations are conclusions of law because they require the exercise of judgment.") For that reason, we treat Finding of Fact No. 11 as a conclusion of law for purposes of evaluating Respondent Father's challenges to the trial court's permanency planning order. *See In re Montgomery*, 311 N.C. 101, 111, 316 S.E.2d 246, 253 (1984) (limiting review of conclusions of law to whether they are supported by findings of fact).

Respondent Father contends that the trial court erred by failing to make the factual findings required in permanency planning orders by N.C. Gen. Stat. § 7B-907(b). After careful consideration of the record and briefs, we agree that the permanency planning order does not comply with the requirements of N.C. Gen. Stat. § 7B-907(b), so that the permanency planning order should be vacated and this matter remanded to the trial court for the entry of a new permanency planning order that complies with the requirements of N.C. Gen. Stat. § 7B-907(b).[6]

According to the decision of this Court in *In re Harton*, 156 N.C. App. 655, 660, 577 S.E.2d 334, 337 (2003), a trial court must make "findings of fact under the specific criteria provided in [N.C. Gen. Stat. § 7B-907(b)]" in a permanency planning order and that a trial court fails to comply with this requirement by simply "stating a single evidentiary fact and adopting DSS and guardian *ad litem* report." As a result, a permanency planning order contravened N.C. Gen. Stat. § 7B-907(b) where it failed to find "that efforts toward reunification with respondent would be futile [or] that such efforts would be inconsistent with the juveniles' health, safety and need for a permanent home." *In re Weiler*, 158 N.C. App. 473, 478, 581 S.E.2d 134, 137 (2003). *See also In re Everett*, 161 N.C. App. 475, 480-81, 588 S.E.2d 579, 583 (2003) (finding that " 'reunification with [mother] remains the plan but reunification is not imminent' " does not constitute sufficient compliance with N.C. Gen. Stat. § 7B-907(b)); *In re Ledbetter*, 158 N.C. App. 281, 285-86, 580 S.E.2d 392, 394-95 (2003) (trial court

---

6. Since we conclude that the trial court must enter a new permanency planning order on remand, we need not address Respondent Father's other arguments.

failed to "make findings regarding 'whether it is possible for the juvenile to be returned home . . . within the next six months' " or "why the child was being transferred from the [foster parents] to his father"); *In re Eckard*, 148 N.C. App. 541, 547, 559 S.E.2d 233, 236 (2002), *dis. review denied*, 356 N.C. 163, 568 S.E.2d 192-93(2002) ("the trial court should have considered whether the natural father was a candidate for custody of Patricia"). On the other hand, a permanency planning order adequately complies with N.C. Gen. Stat. § 7B-907(b) in the event that the trial court "did consider and make written findings regarding the relevant [N.C. Gen. Stat. §] 7B-907(b) factors." *In re J.C.S.*, 164 N.C. App. 96, 106, 595 S.E.2d 155, 161 (2004). *See also In re L.B.*, 181 N.C. App. 174, 190, 639 S.E.2d 23, 31 (2007). As a result, even though a "permanency planning order does not contain a formal listing of the [N.C. Gen. Stat. §] 7B-907(b) factors, expressly denominated as such," that order was not subject to reversal for failing to address the issue of whether the children could return home in the next six months because the trial court "chang[ed] the permanent plan for [the juveniles] to adoption." *In re J.C.S.*, 164 N.C. at 106, 595 S.E.2d at 161. As a result, in order to address Respondent Father's·challenge to the permanency planning order, we must decide whether that order adequately addressed the issues posited by N.C. Gen. Stat. § 7B-907(b).

The challenge lodged by Respondent Father to the adequacy of the permanency planning order's compliance with N.C. Gen. Stat. § 7B-907(b) hinges upon his contention that, although "the [trial] court found that it was not in the best interests [of] the children to be returned home at the time of the hearing," it "made no such findings about whether the children could be returned home within the next six months." After careful review of the trial court's findings of fact, we agree with Respondent Father's contention. A cursory examination of the trial court's findings demonstrates that the trial court never specifically addressed the issue of whether Joy could be returned to the home within the next six months. Furthermore, nothing in the trial court's findings addresses this issue by implication, as occurred in *In re J.C.S.*, 164 N.C. App. at 105-06, 595 S.E.2d at 161 ("by changing the permanent plan for J.C.S. and R.D.S. to adoption, the trial court necessarily determined that it was not in the children's best interests to return home within the next six months"), and *In re L.B.*, 181 N.C. App. at 190-92, 639 S.E.2d at 31-32 (findings that mother failed to undergo or make adequate efforts to obtain a required psychological examination, failed to demonstrate that she had adequate room for the juveniles, or conquered her anger problems coupled

with a finding that the juvenile had no interest in visiting with the mother at this time complied with the requirement that findings be made addressing whether the juvenile could be returned to the home within the next six months). The only relevant statements in the permanency planning order before the Court in this case are the trial court's finding that (1) Joy had witnessed seriously inappropriate conduct by Respondent Father in the past and did not want unsupervised visits with Respondent Father; its finding that (2) Joy was doing well in her current placement; and its conclusion that, (3), despite Respondent Father's successful completion of his case plan, returning [Marilyn] and [Joy] "to their own home would be contrary to their health, safety, and best interests." After careful consideration of the trial court's findings, we are unable to discern whether the trial court believes that returning Joy to the family home at some point in the future would be possible and, if so, when and under what circumstances such a development might be appropriate. Furthermore, the fact that the trial court adopted guardianship as the permanent plan for Joy does not eliminate the necessity for addressing the issue raised by Respondent Father in the same manner that the selection of adoption as a permanent plan clearly does, since N.C. Gen. Stat. § 7B-600 allows the termination of a guardianship established in a permanency planning order and the reintegration of the juvenile "into a parent's home" in the event that "the court finds that the relationship between the guardian and the juvenile is no longer in the juvenile's best interest, that the guardian is unfit, that the guardian has neglected the guardian's duties, or that the guardian is unwilling or unable to continue assuming a guardian's duties." Thus, since the trial court's findings of fact simply do not address the issues posited in N.C. Gen. Stat. § 7B-907(b), we conclude that the permanency planning order should be vacated and that this matter should be remanded to the trial court for the entry of a new permanency planning order containing adequate findings of fact and conclusions of law.

Vacated and remanded for additional findings.

Judges ROBERT N. HUNTER, JR., and BEASLEY concur.