HUNTER, JR., Robert N., Judge.
Respondent-father appeals from a permanency planning order which, inter alia , establishes guardianships for his minor children "Donny," "Jill," and "John"[1] (collectively, "the children"). We affirm.
I. Factual Background
Wake County Human Services ("WCHS") filed juvenile petitions on 10 May 2016 alleging nine-year-old Donny, ten-year-old Jill, and thirteen-year-old John were neglected and dependent. The petitions alleged that on 17 March 2016, WCHS received a Child Protective Services ("CPS") report of substance abuse and domestic violence in the home, which was confirmed by the social worker interviewing the children. The children told the WCHS social worker they did not feel safe in the home and asked to go live with their adult brother. Further investigation revealed Respondents' residence was strewn with trash and infested by cockroaches and bedbugs. The social worker later observed what appeared to be a drug transaction in the home.
In April 2016, the petitions alleged, WCHS received reports that a drug dealer broke into Respondents' home, punched holes in the wall, and threatened to " 'shoot-up the residence' " and kill Respondent-mother if he was not paid the money he was owed. During a Child and Family Team meeting, Respondent-mother admitted she smoked marijuana and crack cocaine, and had allowed her cousin to sell drugs in the residence. Respondent-father acknowledged being an alcoholic. WCHS also learned Respondent-father had a pending charge for assaulting a child under twelve years of age, and Respondent-mother had been convicted of possession of drug paraphernalia.
The petitions also described Respondents' extensive CPS history, which included each of the children testing positive for cocaine at birth. Moreover, between 1996 and 2016, WCHS had received eleven reports of child neglect and abuse relating either to Respondents' substance abuse and domestic violence or to their denial of medical care for another daughter, who has sickle cell disease.
WCHS obtained non-secure custody of the children on 10 May 2016. At a hearing held 7 June 2016, the parties tendered a joint written stipulation to facts generally consistent with the allegations raised in WCHS's petitions. Respondent-father denied criminally assaulting Respondent-mother in the children's presence as reported in March 2016, but conceded the children were negatively affected by Respondents' "volatile" relationship. Respondents denied a drug dealer had broken into their home and threatened their family, attributing these reports to a "misunderstanding" that resulted when Respondent-mother's cousin acted "unruly in their home about money that was owed to him[.]" Respondent-mother "admitted to allowing her cousin to sell drugs at the residence" but only "while the children were not present in the home." Respondents otherwise stipulated to the substance abuse issues, criminal charges, and CPS histories alleged in the petitions. Based on these stipulated facts, the trial court adjudicated the children neglected and dependent by order entered 28 July 2016.
On 10 January 2017, the trial court established for the children a primary permanent plan of adoption and a secondary plan of reunification with Respondents. The court found both Respondents were not making reasonable progress to correct the conditions that led to the children's removal from the home, and both Respondents were "acting in a manner inconsistent with the health or safety of the children." The court further found Respondent-father "is not actively participating in or cooperating with [his case] plan, WCHS, or the Guardian ad Litem"; he "has not followed the recommendations of his substance abuse assessment"; he "has not been available to schedule a psychological evaluation"; that he "has not regularly exercised visits with the children and ... has not provided financial assistance to the children"; and he "has not resolved or made progress towards having safe, stable housing for the children."
The trial court made similar findings with regard to Respondents' lack of progress in subsequent permanency planning orders entered on 5 June 2017 and 10 January 2018. The court changed the children's primary permanent plan from adoption to guardianship with a court-approved caretaker but maintained reunification as the secondary plan.
After an additional permanency planning hearing on 15 and 18 May 2018, the trial court entered an order on 23 May 2018 awarding guardianship of the children to their current caretakers. Donny and John were made wards of Ms. S., who had cared for the boys since 27 October 2016. Jill was placed in the guardianship of Ms. G., with whom she had lived since 7 February 2017. Respondent-father filed timely notice of appeal from the order.
II. Jurisdiction
The 23 May 2018 order of the district court changed the legal custody of three juveniles. This Court reviews the order pursuant to N.C. Gen. Stat. § 7B-1001(a)(4).
III. Standard of Review
Our "review of a permanency planning order is limited to whether there is competent evidence in the record to support the findings and [whether] the findings support the conclusions of law." In re J.V. , 198 N.C. App. 108, 112, 679 S.E.2d 843, 845 (2009) (alteration in original) (internal quotation marks omitted). The trial court's findings of fact "are conclusive on appeal when supported by any competent evidence, even if the evidence could sustain contrary findings." In re L.T.R. , 181 N.C. App. 376, 381, 639 S.E.2d 122, 125 (2007) (internal quotation marks omitted). Findings not specifically challenged by the parties are likewise binding on appeal. See In re S.C.R. , 198 N.C. App. 525, 531, 679 S.E.2d 905, 909, appeal dismissed , 363 N.C. 654, 686 S.E.2d 676 (2009). In choosing an appropriate permanent plan under N.C. Gen. Stat. § 7B-906.1 (2017), the juvenile's best interest is paramount. In re T.K. , 171 N.C. App. 35, 39, 613 S.E.2d 739, 741, aff'd per curiam , 360 N.C. 163, 622 S.E.2d 494 (2005). We review a trial court's assessment of a juvenile's best interest for abuse of discretion. In re D.S.A. , 181 N.C. App. 715, 720, 641 S.E.2d 18, 22 (2007).
IV. Analysis
Respondent-father first claims the trial court erred by appointing guardians for his children without making a finding "that [he] was unfit or had acted inconsistently with his constitutional protected status as their father." It is true the Constitution's Due Process Clause protects a "parent's paramount constitutional right to custody and control of his or her children[,]" and that "the government may take a child away from his or her natural parent only upon a showing that the parent is unfit to have custody or where the parent's conduct is inconsistent with his or her constitutionally protected status." Adams v. Tessener , 354 N.C. 57, 62, 550 S.E.2d 499, 503 (2001) (citations omitted). Here, however, neither Respondent-mother nor Respondent-father raised this constitutional issue in the trial court. We have held a parent's right to findings regarding his constitutionally protected status is waived if the parent does not raise the issue in the trial court. See In re B.G. , 197 N.C. App. 570, 573-74, 677 S.E.2d 549, 552 (2009) (reviewing father's claim that the trial court erred in awarding custody of his child to non-parent relatives without finding he had acted inconsistently with his constitutionally protected status, but only after remanding to the trial court to verify that father "ma[d]e his constitutional argument at trial" (quoting In re B.G. , 191 N.C. App. 399, 663 S.E.2d 12, 2008 N.C. App. LEXIS 1357, *10 (2008) (unpublished))); see also In re T.P., 217 N.C. App. 181, 186, 718 S.E.2d 716, 719 (2011) (holding mother "waived review of this issue on appeal" based on the doctrine that "[c]onstitutional issues not raised and passed upon at trial will not be considered for the first time on appeal" (citation and internal quotation marks omitted)). Respondent-father has failed to preserve this issue for appeal.[2]
We note WCHS made it clear, both in its written report to the court and at the outset of the hearing, that it was seeking guardianship for the children.
Q. You're asking to award guardianship of [Donny] and [John] today?
A. Yes. And [Jill].
Q. And [Jill]?
A. Yes.
Q. And who are you recommending they be placed in the guardianship of?
A. With their current guardians.
Q. Okay. Where are they currently residing?
A. [Donny] and [John] are with [Ms. S.] here in Raleigh, and [Jill] is with [Ms. G.] in Cumberland County, Fayetteville.
Respondent-father was thus clearly on notice that guardianship was at issue and had the opportunity to raise any constitutional objections. Cf. In re R.P. , --- N.C. App. ----, ----, 798 S.E.2d 428, 431 (2017) ("declin[ing] to find waiver here ... because we conclude that respondent was not afforded the opportunity to raise an objection at the permanency planning review hearing").
Respondent-father next claims the trial court erred by eliminating reunification from the children's permanent plan without making the requisite findings under N.C. Gen. Stat. § 7B-906.2(b) (2017). Subsection 7B-906.2(b) provides that "[r]eunification shall remain a primary or secondary plan unless the court ... makes written findings that reunification efforts clearly would be unsuccessful or would be inconsistent with the juvenile's health or safety." N.C. Gen. Stat. § 7B-906.2(b) ; see also N.C. Gen. Stat. § 7B-906.1(d)(3) (2017). The determination that further reunification efforts would be futile or inconsistent with the juvenile's health or safety " 'is in the nature of a conclusion of law that must be supported by adequate findings of fact.' " In re J.H. , 244 N.C. App. 255, 276, 780 S.E.2d 228, 243 (2015) (quoting In re E.G.M. , 230 N.C. App. 196, 209, 750 S.E.2d 857, 867 (2013) ).
Respondent-father acknowledges the trial court's order does not explicitly remove reunification from the children's permanent plan. He contends, however, that the order "indirectly and effectively" does so by appointing guardians for the children, waiving further scheduled hearings in the cause, and relieving WCHS, the guardian ad litem, and Respondents' counsel from further responsibility. We are not persuaded.
In support of his argument, Respondent-father cites In re D.A. , --- N.C. App. ----, ----, 811 S.E.2d 729, 733 (2018). In In re D.A. , this Court determined a trial court's order "effectively ceased reunification efforts" by " '(1) eliminating reunification as a goal of [the juveniles'] permanent plan, (2) establishing a permanent plan of guardianship with [the prospective guardians], and (3) transferring custody of the children ... to their legal guardians.' " Id. at ----, 811 S.E.2d at 733 (alterations in original) (quoting In re N.B. , 240 N.C. App. 353, 362, 771 S.E.2d 562, 568 (2015) ).
The current version of the Juvenile Code designates the elimination of reunification from a juvenile's permanent plan - not the ceasing of reunification efforts - as the act giving rise to a right of appeal. See N.C. Gen. Stat. § 7B-1001(a)(5) (2017) (referencing N.C. Gen. Stat. § 7B-906.2 ). In In re D.A. , the trial court's order expressly eliminated reunification from the child's permanent plan. In re D.A. , --- N.C. App. at ----, 811 S.E.2d at 733 ; see also In re N.B. , 240 N.C. App. at 362, 771 S.E.2d at 568 (addressing the respondent's argument that the trial court made insufficient findings under N.C. Gen. Stat. § 7B-906.1(d)(3) (2013) ). Accordingly, the trial court was required to make the requisite written findings prescribed in N.C. Gen. Stat. § 7B-906.2(b).
Here, the trial court did not eliminate reunification as the children's secondary permanent plan. The order implements the children's primary permanent plan of guardianship while declaring that WCHS
made reasonable efforts to place the children in a timely manner in accordance with the primary permanent plan of guardianship and secondary permanent plan of reunification with a parent , and completed whatever steps were necessary to finalize the permanent placement of the children and documented such steps in each child's case plan.
(Emphasis added). The order further provides "that the matter may be reviewed upon motion by the parties or the Court" at any time. The court awarded both parents regular visitation with the children.
V. Conclusion
We are unwilling to conclude that, by virtue of realizing the primary permanent plan of guardianship, the trial court "effectively or indirectly" removed the secondary plan of reunification. Because the court did not completely eliminate reunification from the permanent plan, it was not required to make findings under N.C. Gen. Stat. § 7B-906.2(b). Id. Respondent-father's exception is overruled.
AFFIRMED.
Report per Rule 30(e).
Chief Judge MCGEE and Judge MURPHY concur.

We use pseudonyms to refer to the juveniles in accordance with N.C.R. App. P. 3.1(b).

Respondent-father's reliance on In re E.C. , 174 N.C. App. 517, 621 S.E.2d 647 (2005) is misplaced. In In re E.C. , we held the respondent was not required to object at the hearing in order to preserve for appeal the trial court's decision to appoint a legal guardian for his child or the court's failure to enter a proper visitation plan. Id. at 520, 621 S.E.2d at 650. However, the respondent in In re E.C. did not challenge the guardianship on constitutional grounds or claim error based on the court's failure to find he acted inconsistently with his constitutionally protected status. Id. at 520-21, 621 S.E.2d at 650-51.