DIETZ, Judge.
Respondent appeals from the trial court's permanency planning order awarding guardianship of her minor child, Jen,[1] to the paternal grandparents and waiving further review hearings. As explained below, we reject Respondent's argument that the Court should have continued proceedings at which Respondent failed to appear. But we agree with Respondent that controlling precedent from this Court requires us to vacate and remand the trial court's order because the evidence in the trial record was insufficient to support the trial court's verification that the paternal grandparents had adequate resources to care for Jen. On remand, the trial court, in its discretion, may receive new or additional evidence and conduct any further proceedings the court deems necessary. Because we vacate the trial court's order on this ground, we do not address Respondent's remaining arguments, which may be mooted by the trial court's new ruling on remand.
Facts and Procedural History
On 2 December 2016, the Ashe County Department of Social Services filed a petition alleging that Jen was a neglected juvenile. The petition alleged that over the year-and-a-half before the filing of the petition, child protective services received five reports regarding Respondent's substance abuse and domestic violence, and that DSS had been providing in-home services to Respondent since 20 October 2016. The petition alleged that Respondent admitted to using marijuana and taking pills for which she did not have a prescription "when things got bad."
The petition also alleged that on 30 November 2016, Jen's maternal grandfather informed her social worker that Respondent appeared delusional and paranoid at their home, and that he thought she was on drugs. Respondent told Jen's maternal grandparents that their toothpaste was poisoned and threw it in the trash. An involuntary commitment proceeding was initiated, but law enforcement could not find Respondent within the 24-hour period for commitment.
The petition further alleged that on 1 December 2016, law enforcement was called to Jen's paternal grandparents' home, where Jen was spending the night, after Respondent went to the home, threatened to take Jen away, "grunt[ed]" at Jen, and threatened to hit Jen's father and paternal grandmother. Respondent also threatened to "sever" the grandmother's head and stated that she was not going to leave until someone shot her. DSS obtained custody of Jen and placed her with her father.
On 2 December 2016, Respondent was involuntarily committed and placed at Catawba Valley Hospital on 6 December 2016. She was subsequently released and entered into a family services case plan on 12 January 2017 to address her mental health and substance abuse issues, as well as housing, employment, and parenting skills.
After a 24 February 2017 hearing, the trial court entered an order on 10 March 2017 adjudicating Jen to be a neglected juvenile. The court continued custody of Jen with DSS and placement with her father, and ordered Respondent to participate in psychiatric treatment or counseling directed toward remedying the behaviors that led to Jen's removal from her care. The court ordered a permanent plan of reunification with Respondent and a secondary plan of custody to the father.
In a 90-day review order entered 29 June 2017, the court found that Respondent had made "tremendous progress" on her case plan. Respondent completed a mental health assessment and was diagnosed with borderline personality disorder. Respondent also began substance abuse treatment and submitted to random drug screens. Respondent passed 18 of the 20 administered drug screens, testing positive for amphetamines in January 2017 and positive for alcohol in March 2017. Respondent admitted to using amphetamines in January 2017 resulting in the positive drug screen. The court further found that Respondent had started parenting classes and found regular employment. The court ordered Respondent to begin unsupervised visitation with Jen at least twice a month for two hours per visit, contingent upon Respondent producing a negative drug screen.
The trial court held a follow-up permanency planning review hearing on 28 July 2017. On 19 September 2017, the trial court entered an order continuing the permanent plan of reunification, with a secondary plan of custody or guardianship with an approved caregiver. The court found that Respondent was no longer making adequate progress on her case plan because she did not have independent housing and did not attend or complete the 12-step recovery program to address her substance abuse issues. The court also found that Respondent was not cooperating with DSS or the guardian ad litem, and was unwilling to meet with the social worker and attend a child and family team meeting.
The court found that although Jen was placed with her father, she predominately stayed with her paternal grandparents during the week due to her father's work schedule. Because of concerns of the father's possible substance abuse, the father's lack of communication with DSS, and a child services report that Jen had cut her toe on an axe at her father's home, DSS placed Jen with her paternal grandparents. The court also changed Respondent's visitation to supervised visits.
On 11 August 2017, Respondent was involuntarily committed after exhibiting concerning behavior at her visit with Jen. Respondent became upset when Jen made a list of places she wished to go with Respondent because Respondent stated Jen should want to just visit with her. The visit was cut short after Respondent became upset that another family was at the park and believed the social worker had "staged" them being there. Upon her release from the hospital, Respondent received a referral to complete a comprehensive clinical assessment at Daymark Recovery Services. After completing the assessment on 7 November 2017, Respondent did not comply with the recommended therapy.
Following a 12 January 2018 permanency planning hearing, the trial court entered an order on 7 March 2018 changing the permanent plan for Jen to guardianship, granting guardianship of Jen to her paternal grandparents, awarding Respondent visitation with Jen, relieving DSS of further efforts toward reunification with Respondent, and waiving further review hearings. Respondent timely appealed.
Analysis
I. Denial of Motion to Continue
Respondent first argues the trial court erred in denying her motion to continue the January 2018 permanency planning hearing due to her unexplained absence from the hearing. We disagree.
The standard for granting a motion to continue a hearing in an abuse, neglect, and dependency proceeding is set out in N.C. Gen. Stat. § 7B-803, which provides:
The court may, for good cause, continue the hearing for as long as is reasonably required to receive additional evidence, reports, or assessments that the court has requested, or other information needed in the best interests of the juvenile and to allow for a reasonable time for the parties to conduct expeditious discovery. Otherwise, continuances shall be granted only in extraordinary circumstances when necessary for the proper administration of justice or in the best interests of the juvenile.
N.C. Gen. Stat. § 7B-803. "A trial court's decision regarding a motion to continue is discretionary and will not be disturbed on appeal absent a showing of abuse of discretion. Continuances are generally disfavored, and the burden of demonstrating sufficient grounds for continuation is placed upon the party seeking the continuation." In re C.M.P. , --- N.C. App. ----, ----, 803 S.E.2d 853, 857 (2017).
Respondent argues the trial court erred in summarily denying the motion to continue without conducting an inquiry into her absence or making any findings concerning her "unexplained and unusual absence." However, Respondent "bore the burden of demonstrating sufficient grounds for continuance." In re C.J.H. , 240 N.C. App. 489, 495, 772 S.E.2d 82, 87 (2015). Here, Respondent's counsel moved to continue the case due to Respondent not being present. Counsel made no argument as to any extraordinary circumstances warranting a continuance, stating only that she "believe[d]" Respondent knew about the hearing date but she had "not talked to [her] since that last court date."
On appeal, Respondent does not argue that she lacked notice of the hearing. And counsel did not argue that she needed additional time to prepare for the hearing. The record does not disclose any attempt by Respondent to contact the court or her counsel to inform them of any issue preventing her attendance at the hearing. Although Respondent argues the trial court erred by failing to inquire into her absence, she has not provided any explanation for her absence from the hearing. As a result, we find that Respondent failed to meet her burden of demonstrating sufficient grounds for a continuance. Therefore, the trial court did not abuse its discretion in denying the motion.
II. Verification of Guardians
Respondent next argues the trial court erred by granting guardianship to Jen's paternal grandparents without properly verifying that they understood the legal significance of the appointment and that they had adequate financial resources to appropriately care for the juvenile. As explained below, we reject Respondent's argument concerning the significance of the guardianship but are constrained to vacate and remand for further proceedings concerning the adequacy of the grandparents' financial resources in light of controlling precedent from this Court.
Our review of a permanency planning review order "is limited to whether there is competent evidence in the record to support the findings and [whether] the findings support the conclusions of law." In re J.V. & M.V. , 198 N.C. App. 108, 112, 679 S.E.2d 843, 845 (2009) (citations omitted). The trial court's findings are deemed to be "conclusive on appeal when supported by any competent evidence, even if the evidence could sustain contrary findings." In re L.T.R. & J.M.R. , 181 N.C. App. 376, 381, 639 S.E.2d 122, 125 (2007) (citations omitted). Conclusions of law are subject to de novo review. In re P.A. , 241 N.C. App. 53, 58, 772 S.E.2d 240, 245 (2015).
N.C. Gen. Stat. § 7B-906.1(j) provides:
If the [trial] court determines that [a] juvenile shall be placed in the custody of an individual other than a parent or appoints an individual guardian of the person pursuant to [N.C. Gen. Stat. §] 7B-600, the court shall verify that the person receiving custody or being appointed as guardian of the juvenile understands the legal significance of the placement or appointment and will have adequate resources to care appropriately for the juvenile.
N.C. Gen. Stat. § 7B-906.1(j) ; see also N.C. Gen. Stat. § 7B-600(c). Under this statute, the trial court is required to make two verifications: first, that the prospective guardian understands the legal significance of the appointment; and second, that the prospective guardian has adequate financial resources to care for the juvenile. Id. The trial court is not required to make extensive or detailed findings of fact in conducting this statutory analysis, "[b]ut the record must contain competent evidence of the guardians' financial resources and their awareness of their legal obligations." In re J.H. , 244 N.C. App. 255, 270-71, 780 S.E.2d 228, 240 (2015).
Respondent contends the evidence was insufficient to support the court's finding that the grandparents "each underst[ood] the legal significance and responsibility of being awarded guardianship." We disagree.
At the hearing, the paternal grandmother testified as follows:
[COUNSEL:] Ma'am, do you believe you understand the responsibilities you are taking on by agreeing to become this child's guardian?
[GRANDMOTHER:] Yes, I do understand. I understand it's serious.
[COUNSEL:] What do you think those responsibilities are for you?
[GRANDMOTHER:] I just want her to have every chance to grow up and be anything she wants to be, because she is a very smart little girl. I just want her to be well cared for, have a good education.
[COUNSEL:] Do you understand that is your responsibility?
[GRANDMOTHER:] Yes, I do.
[COUNSEL:] Are you comfortable with accepting that responsibility?
[GRANDMOTHER:] Yes.
[COUNSEL:] Your husband feel the same way?
[GRANDMOTHER:] Yes, he does.
[COUNSEL:] Do you understand that you're going to be the one that will be required to attend school meetings, and doctor's appointments, and ball games, and extracurricular activities, and whatever else it is that she might be into?
[GRANDMOTHER:] Yes. I already do that, yes.
[COUNSEL:] So you're willing and able to continue doing that?
[GRANDMOTHER:] Yes.
Respondent contends this inquiry was insufficient to support the court's finding that the paternal grandfather understood the legal significance. Respondent contends that testimony from the paternal grandfather is necessary to establish this fact.
To be sure, this Court has held that when two persons are appointed together as guardians, the trial court must verify the understanding of both proposed guardians. See In re L.M. , 238 N.C. App. 345, 348-49, 767 S.E.2d 430, 433 (2014). But we have not held that independent testimony from both persons is necessary for the trial court to verify this fact.
Here, the trial court heard evidence that both grandparents understood the legal significance of guardianship. The paternal grandmother testified to her and the grandfather's mutual understanding of the rights and responsibilities of being awarded guardianship, stating that she understood the responsibility and is comfortable accepting that responsibility, and that the grandfather feels the same way. We hold this evidence is sufficient to support the trial court's determination that both grandmother and grandfather understood "the legal significance and responsibility of being awarded guardianship." The cases cited by Respondent are distinguishable because, in those cases, there was no evidence-from any witness-that the non-testifying guardian understood the legal significance of the guardianship. See id. ; see also In re E.M. , --- N.C. App. ----, ----, 790 S.E.2d 863, 872 (2016). Accordingly, we reject Respondent's argument.
We next turn to whether the court received sufficient evidence to conclude that the grandparents possessed adequate resources. Respondent relies on this Court's decisions in In re P.A. , 241 N.C. App. 53, 772 S.E.2d 240 (2015), and In re J.H. , 244 N.C. App. 255, 780 S.E.2d 228 (2015), to support her assertion that the evidence was insufficient to verify the grandparents had adequate resources. Because we are unable to distinguish these controlling cases, we are constrained to vacate and remand for further proceedings.
In In re P.A. , this Court vacated and remanded a permanency planning order appointing the father's girlfriend as a guardian for the child, holding that the evidence was insufficient to support a finding that the guardian had adequate resources to appropriately care for the child. The Court noted that there was no evidence of what the guardian considered to be adequate resources, or what her resources were, other than the fact that she was providing a residence for the child. 241 N.C. App. at 65, 772 S.E.2d at 248.
In In re J.H. , the trial court heard evidence that the child had been in a successful placement with the grandparents for 10 months before the hearing, that the grandparents had met all of the child's medical and well-being needs and ensured he had yearly well-checkups, that the child had no current financial or material needs, and that the grandparents also had custody of the child's sister. Nevertheless, this Court held that "this evidence alone is insufficient to support a finding that [the child's] grandparents 'have adequate resources' to care for [the child]." 244 N.C. App. at 271-72, 780 S.E.2d at 240. The Court held that there must be specific evidence concerning the resources available and the needs of the child that is sufficient for the trial court to "make an independent determination, based upon facts in the particular case, that the resources available to the potential guardian are in fact adequate." Id. at 272, 780 S.E.2d at 240.
Here, the paternal grandmother testified to the following: (1) she is retired and receives a "little retirement check from Sara Lee"; (2) the grandfather works full time, working four 10-hour shifts Monday through Thursday; (3) they own their own home located on the grandfather's family's property, and they have owned it for at least fifteen years; (4) Jen has resided in the placement with the grandparents for six months; and (5) she feels she and her husband can financially take on the responsibility of caring for Jen. Jen's social worker testified only that the grandfather worked full time, and the grandmother received retirement, but she did not know from where.
This evidence is essentially the same as the evidence this Court previously found insufficient in In re P.A. and In re J.H. Accordingly, we vacate the trial court's permanency planning order awarding guardianship to the paternal grandparents and remand for further proceedings. We leave to the discretion of the trial court the determination of whether to receive new or additional evidence on remand and whether further evidentiary proceedings are necessary. See In re D.R.B., 182 N.C. App. 733, 739, 643 S.E.2d 77, 81 (2007).
Conclusion
For the reasons discussed above, we vacate the trial court's permanency planning order and remand for further proceedings consistent with this opinion.
VACATED AND REMANDED.
Report per Rule 30(e).
Judges BRYANT and ARROWOOD concur.

A pseudonym is used to protect the juvenile's identity and for ease of reading.